[Civil No. 2798. Filed April 9, 1929.]

[276 Pac. 325.]

F. J. PADDOCK, Mayor; B. F. CARTER, JAMES A. GODWIN, WILLIAM ROER, C. L. MADDOX, Commissioners of the City of Phoenix, Maricopa County, Arizona; and CHARLES E. GRIGGS, City Manager of the City of Phoenix, Maricopa County, Arizona, Appellants, v. GEORGE O. BRISBOIS, JAMES H. ALLEN and EDWIN C. MOORE, Appellees.

See Constitutional Law, 12 **C. J.**, sec. 318, p. 835, n. 8.
Municipal Corporations, 43 **C. J.**, sec. 185, p. 186, n. 92, sec. 186, p. 189, n. 13, sec. 1627, p. 892, n. 37.

Mr. C. H. Young, City Attorney, Mr. L. M. Laney, Mr. Frank H. Lyman, and Mr. E. S. Clark, for Appellants.

Mr. Herman Lewkowitz, Mr. W. E. Ryan, and Mr. Louis B. Whitney, for Appellees.

ROSS, J.—This action grew out of the administration of the civil service of the city of Phoenix, and involves the construction of its charter, an ordinance passed under its charter, and the rules and regulations as formulated thereunder by the Civil Service Commission.

The appellees, George O. Brisbois, chief of police, James H. Allen, night captain of police, and Edwin C. Moore, desk sergeant and clerk of the police, were, on March 8, 1928, by written orders assigning reasons therefor, dismissed from the service by the city manager. They were all in the classified civil service, and accordingly demanded and were granted a hearing before the Civil Service Commission as its rules provided. The findings of the commission were that the grounds of discharge were not sustained, and that all of the appellees should be reinstated in their respective positions and be paid their back salaries. After such order, appellees reported for duty and were refused restoration.

They instituted separate actions in *mandamus* (afterwards consolidated) to compel the appellants (mayor, city commissioners, and city manager) to reinstate them and to pay their back salaries. The latter, by demurrer and by answer, challenged the validity of those provisions of the ordinance and the rules of the Civil Service Commission investing, or attempting to invest, the commission with the power to prevent the discharge, or to compel the re-employment with back pay of appellees.

On the hearing of the *mandamus,* it was shown that other persons had been appointed to fill the positions of chief of police, night captain of police, and desk sergeant and clerk of the police, who were performing

the duties thereof and receiving the salaries. It was ruled by the lower court that the complaint stated a cause of action, and, there being no dispute as to the facts, judgment was entered directing the appellants to reinstate appellees and pay them their back salaries.

From this judgment this appeal is taken, and the error assigned is that the relief granted is not justified under the law and facts, for the reason that the power to discharge appellees is by the charter vested in the city manager, and the ordinance and rules of the Civil Service Commission, being in contravention thereof, are invalid and of no effect. The pertinent provisions of the charter are as follows:

"The city assessor, city collector, city engineer, chief of police, fire chief, superintendent of streets and such other officers as the commission may create by ordinance under the authority of this charter, shall be appointed by the city manager by and with the consent and approval of the commission." Section 7, chap. 3.

"Subject to the control of the commission, the manager shall have the general supervision and direction of the administrative operation of the city government; he shall supervise and direct the official conduct of all appointive city officers except the auditor, city attorney, city clerk, city treasurer and city magistrate; . . . *he shall employ and discharge* from time to time, as occasion requires all employees of the city appointed by him by and with the consent and approval of the commission; *he shall appoint all officers of the city, the appointment or election of whom is not otherwise provided for in this charter, and may remove them* when the interests of the city require. . . . (Italics ours.) Section 1, chap. 6.

"Section 1. The legislative powers of the city of Phoenix shall be vested in and exercised by the commission except as herein limited or reserved to the electors of the city. The legislative powers of the city shall extend to all rightful subjects of legislation not forbidden by the Constitution of the United

States, the Constitution or laws of the state of Arizona, or the provisions of this charter.

"Section 2. As the legislative organ of the city of Phoenix, the commission, subject to the provisions and restrictions of this charter, shall have the power by proper ordinances or resolutions, to carry out each and every power, right and privilege herein and hereby vested in the city of Phoenix, and by such legislation to enforce said rights, powers and obligations, and to secure the performance of all obligations and indebtedness to others. And in addition to the powers hereinabove enumerated and referred to, the city, and the commission acting for and in its behalf, shall have the further powers hereinafter enumerated and set forth, to wit: . . .

"(58) To establish a park board, playground board, board of public charities, and such other boards as they deem advisable, and to appoint members thereon, to serve without compensation, with such powers and duties as may be fixed by the commission; also to establish a civil service board and prescribe its duties." Chapter 4.

In pursuance of the authority conferred by subdivision 58 of section 2, chapter 4, *supra,* in May, 1924, an ordinance was passed by the city commission, and upon submission to the people approved by a majority vote, establishing a Civil Service Commission and prescribing its duties. The ordinance provided that the Civil Service Commission should prescribe and enforce a rule (among others) for the city's classified service, which should have the force and effect of law after approval thereof by the city commission, as follows:

"For discharge or reduction in rank or compensation after appointment or promotion is complete only after the person to be discharged or reduced has been presented with the reason for such discharge or reduction, and has been allowed a reasonable time to reply thereto in writing." Subsection 12, § 3, Ordinance No. 715.

The rules formulated by the Civil Service Commission under this provision of the ordinance required that all removals for cause should be referred to said commission and that "no employee in the classified service shall be discharged or reduced in pay or position, except for just cause. Further, no such employee shall be discharged or reduced, until he shall have been furnished with a written statement of the reasons for such action and been allowed to give the removing officer such written answer within five days as the person sought to be removed may desire." Paragraph 3, Rule 14.

A hearing by the commission of the charges and the answer thereto is provided for, and when the finding and decision of the commission thereon is certified to the appointing officer or authority, it is made the duty of such officer or authority to enforce it.

There can be no question of the power of the city commission to establish by ordinance a Civil Service Commission and prescribe its duties, that power being conferred by subdivision 58, section 2, chapter 4 of the charter, *supra.* But does this power extend to taking from, or authorize the Civil Service Commission to take from, officers of the city powers vested in them by the charter and the conferring of such powers on others? In other words, the charter having conferred the power of appointing and removing officers and employees of the city in the city manager, can the city commission, under the authority of said subdivision 58, establish a Civil Service Commission and confer on it the power to defeat the city manager's charter powers of dismissal, by requiring him to obtain the consent of the Civil Service Commission before exercising such power?

We are of the opinion that the ordinance establishing the Civil Service Commission and the rules form-

ulated thereunder, so far as they undertake to deprive the city manager of the power to dismiss officers and employees that the charter empowers him to discharge, assume a power not delegated by the charter to the city commission. Nor do we think the fact that the ordinance was submitted to and approved by the qualified electors of the city adds to its force or validity. The general legislative power of the city, whether exercised by the city commission or by the qualified electors under the initiative and referendum, is the same.

The form of government of an incorporated city is analogous to that of the state. Like the state it has a Constitution, only it is called a charter. It has three departments, legislative, executive and judicial, as does the state. A state Constitution, however, is a limitation of power, whereas a charter of a city, like the federal Constitution, is a grant of power. The organs through which the state speaks and acts may exercise all governmental powers not denied them by the Constitution and not surrendered to the federal government. A city can exercise only such powers as are delegated to it by the Constitution and the laws of the state and its charter. In this respect its powers are, like those of the federal government, delegated.

Phoenix is organized and operating under a freeholders' charter, formed under article 13 of the Constitution. Section 2 of said article provides that any city of more than 3,500 population "may frame a charter for its own government consistent with, and subject to, the Constitution and the laws of the state," which, when approved as therein provided, "shall become the organic law of such city." The power to adopt this organic law, as also the power to amend it, is vested in the qualified electors of the city, and its adoption, or any amendment thereof, must be approved by the Governor.

It is a well-recognized principle that, when the Constitution creates an office, board or commission, and defines and prescribes its powers and duties, it is not within the power of the legislature to transfer such powers and duties to an office, board, or commission of its own creation. 13 Op. Attys. Gen. 516; *Walton* v. *Donnelly,* 83 Okl. 233, 201 Pac. 367; *Trapp* v. *Cook Construction Co.,* 24 Okl. 850, 105 Pac. 667; *People* v. *Mosher,* 163 N. Y. 32, 79 Am. St. Rep. 552, 57 N. E. 88. The impotency of the legislature to set aside positive provisions of the Constitution is because what the people have put into that instrument is the paramount law. Likewise the legislative body of a city is impotent to change or alter by ordinance or resolution the organic law of the city.

"It is very familiar law that an ordinance is void which conflicts with the charter of the municipality. A charter is, so to speak, the municipal organic law which no ordinance may override." *Kemp* v. *City of Monett,* 95 Mo. App. 452, 69 S. W. 31.

Moreover, the charter of Phoenix, in section 1, chapter 4, *supra,* prohibits the city commission from legislating on subjects forbidden it, *inter alia,* "by . . . the provisions of this charter." The charter powers, under the Constitution, are conferred on the city by the people of the city, and they in their wisdom have placed the power to discharge officers and employees in the city manager. Section 1, chap. 6, *supra.* This power to discharge given to the manager by the charter is a prohibition of its exercise by any other person or officer and stands as the paramount law on that subject until changed in the manner provided by the charter. "Every positive [constitutional] direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision." *People* v. *Draper,* 15 N. Y. 544.

But it may be said that, since the charter authorizes the city to establish a Civil Service Commission and prescribe its duties, the city commission did not exceed its powers in providing by ordinance that no officer or employee could be discharged except with the consent of the Civil Service Commission, after formal accusation and trial before it. The power conferred by the charter on the city's legislative organ to create a Civil Service Commission and fix its duties necessarily, under the canons of construction, authorizes an organization that can lend some efficient aid to the municipality in substituting the "merit system" for the "spoils system"—the dominant purpose of the civil service. But the extent that such organization may be clothed with power by the city is restricted and limited by the city's organic law. The mere authorization to set up a civil service for its officers and employees does not by implication empower the city law-making body to override the charter or to transfer the powers vested in its managing officer to the Civil Service Commission. The commission to be constituted must be one whose powers and duties harmonize with those vested by the charter in the city manager.

Civil service in recent years has become quite common in this country, but neither it nor the body that administers it has any fixed, definite or common meaning. In some jurisdictions Civil Service Commissions are endowed with power to hold examinations of applicants for positions, to keep a civil service list of eligibles, the records of employees and officers, and to certify names as needed to the appointing power. This is true of the federal civil service and, while the rule is to make appointments from the list furnished, the appointing officer cannot be legally required to do so. 13 Op. Attys. Gen. 516. In many of the states the Civil Service Commission not only

performs the above duties, but it is vested with the veto power in the dismissal of officers and employees within the classified service.

The city commission, acting as the law-making body of the city, unquestionably possessed the power to create a Civil Service Commission and assign to it powers and duties not reposed by the charter in others. It could not invest that body with power to compel the retention of officers and employees in the classified service against the will of the city manager. Under the Constitution the power to change the rule concerning the removal or discharge of officers and employees resides only in the qualified electors of the city. It was they who adopted the charter, and they only may change it.

The provision of the Constitution in that regard reads as follows:

"The charter so ratified may be amended by amendments proposed and submitted by the Legislative authority of the city to the qualified electors thereof (or by petition as hereinafter provided), at a general or special election, and ratified by a majority of the qualified electors voting thereon and approved by the Governor, as herein provided, for the approval of the charter." Section 2, art. 13.

When the freeholders of Phoenix adopted the present charter they elected to give it the managerial form. They envisioned its operating government as a "big business" and accordingly provided for its management. The powers and duties of the mayor and four commissioners are assimilated to the powers and duties of a board of directors of a private corporation, and those of the city manager to those of a general manager of such a corporation. In the charter as originally adopted the duty and power freely to employ and discharge (with few exceptions) all officers and employees of the city is vested in the city manager (section 1, chapter 6), on the theory, no

doubt, that this was necessary to a successful and economic administration of the city's affairs. Later, in 1915, section 1, chapter 6, *supra,* was amended, and, as amended, confirmed these same powers in the city manager, "subject to the control of the commission."

It is contended this power of supervision over appointments to and removals from the service was properly exercised by the commission, when it undertook to delegate such power to the Civil Service Commission, created by it under subdivision 58, *supra.* But we understand that such supervision is personal to the commissioners, and requires of the commissioners an exercise of judgment and discretion, not only in passing on appointments made by the city manager, but also in the matter of dismissals by him. In other words, such supervision is an administrative duty in its nature, requiring the exercise of judgment and discretion by the commissioners, and therefore not delegable. The commission could no more delegate its duty of supervision than the city manager could delegate his duty of appointing and removing officers and employees. This duty of supervision is as personal to the commission as the duty of legislating for the municipality, and as unsusceptible under the rules of law of delegation to others. "Subject to the control of the commission," when construed as evidently intended, means that appointments and dismissals by the city manager shall be with the consent or approval of the commission, or a majority thereof. The commission may reject or confirm appointments. It may approve or veto dismissals. The commission cannot delegate this power, since it alone is commissioned to exercise it. *Hooper* v. *Creager,* 84 Md. 195, 35 L. R. A. 202, 35 Atl. 967, 1103, 36 Atl. 359; 22 R. C. L. 432, § 83.

That a commission with real power in the matter of appointments, promotions, demotions and discharges, would be a fine adjunct to the city govern-

ment, we have no doubt. As is said in the well-considered case of *People* v. *McCullough,* 254 Ill. 9, Ann. Cas. 1913B 995, 98 N. E. 156:

" . . . Positions in the public service are not the personal or political perquisites of any officer or party, and ought not be divided, after a political campaign, as so much loot of actual warfare, but . . . competency, merit, and fitness ought to be the standard for all appointments or promotions in the public service."

The merit system, however much it may appeal to us, or however desirable for our municipalities, can be secured only in the manner and by the means appointed in the law. The Civil Service Commission as now established cannot compel the city manager to keep or reinstate appellees. Its investigations, reports and decisions in the matter of dismissals are only advisory, and in aid of a proper, equitable and just exercise of that power by the city manager. He may follow or disregard the commission's findings, just as he chooses. If it is desirable that the commission's decisions be binding on the city manager, the qualified electors can accomplish that result by amending the charter as heretofore indicated.

The judgment of the lower court must be reversed, and that is the order; also that the complaint be dismissed.

LOCKWOOD, C. J., and McALISTER, J., concur.