[Civil No. 4075. Filed February 13, 1939.]

[87 Pac. (2d) 109.]

OLGA WELCH, Plaintiff, v. THE STATE BOARD OF SOCIAL SECURITY AND WELFARE, W. P. MAHONEY, ETHER HAYNIE, ANGELA HAMMER, M. B. HODGES and BERNARD MacDONALD, as Members of the State Board of Social Security and Welfare; HARRY W. HILL, as State Commissioner of the State Department of Social Security and Welfare of the State of Arizona; HARRY W. HILL, as Executive and Administrative Officer of the State Department of Social Security and Welfare of the State of Arizona; HARRY W. HILL, as Secretary of the State Board of Social Security and Welfare of the State of Arizona; and ANA FROHMILLER, as State Auditor of the State of Arizona, Defendants.

168

Messrs. Wilson & Wilson, for Plaintiff.

Mr. Joe Conway, Attorney General, Mr. Earl Anderson, Special Assistant Attorney General, Mr. Edward P. Cline, Assistant Attorney General, and Mr. J. R. McDougal, of Counsel, for Defendants.

LOCKWOOD, J.—This is a petition for a writ of original *mandamus* by Olga Welch, hereinafter called plaintiff, against the State Board of Social Security and Welfare, Harry W. Hill as commissioner of the State Department, and Ana Frohmiller as state audi-

tor, praying that they be directed to issue a warrant to plaintiff in payment for certain services rendered by her to the Maricopa County Board of Social Security and Welfare.

The case involves a consideration and interpretation of chapter 69, Session Laws of 1937, commonly known as the ''Social Security Act,'' and comes before us on an agreed statement of facts. These facts may be summarized as follows: John A. Foote, Roy McCarthy and R. M. Jamison composed the Maricopa County Board of Social Security and Welfare, created under the provisions of chapter 69, *supra*. They had employed plaintiff as a social work supervisor, in conformity with the instructions, rules and regulations relating to personnel theretofore issued by the state board under the provisions of section 8 of the act, and the state board had agreed to pay plaintiff the sum of $165 per month for her services as such social work supervisor.

On December 28, 1938, Harry W. Hill, who was at that time the commissioner of the state department, wrote a letter to the county board calling attention to certain charges made by the Works Progress Administration against plaintiff, and stating:

'' . . . You will please check into this and if you find that this has been done, it is imperative that this party be removed from her position at once.

. . . . . . . . . . . . .

''Please advise me at once as to what action you take in this matter.''

On January 5, 1939, the county board replied, stating in substance that they had made a full investigation of the matter complained of, and '' . . . the Board feels that this mistake, which any prudent person might have made, does not warrant dismissal at this time,'' but adding that the matter was not closed, and if the state board wished a further investigation,

it would be glad to assist therein, and if new facts were uncovered which would warrant plaintiff's dismissal, it would be glad to see that the dismissal was made. On January 6th the commissioner replied to this letter as follows:

"Pursuant to the authority vested in the State Board of Social Security and Welfare and the Commissioner by the provisions of Chapter 69, Session Laws 1937, and more particularly the provisions of Subdivision (b) of Section 10, of said Chapter, you are hereby directed to discharge Mrs. Olga Welch as an employee of your department at once, for the reasons stated in my letter to Mr. Finch under date of December 28, 1938.

"In the event that you fail to discharge this party, it will be necessary for me as the executive head of the State Department of Social Security and Welfare, acting under the authority of the Board, to discharge Mrs. Welch, and remove her name from the payroll.

"I shall expect advice from you not later than Monday, January 9, 1939, as to whether or not you have discharged the duties prescribed by this letter."

The next day the county board replied in the following language:

"The Maricopa County Board of Social Security and Welfare feels that you are over-stepping your authority in ordering the Board to discharge Mrs. Olga Welch, an employee of the Maricopa County Department of Social Security and Welfare.

"The Board wishes to call your attention to Chapter 69, Session Laws of 1937 and particularly to Subdivision D, Section 10. The Board also wishes to call your attention to Rule 9 of the Revised Rules and Regulations governing the merit system in the Arizona Department of Social Security and Welfare, May 1, 1938; said rule 9 deals with appointments. Also your attention is directed to Rule 13 of the above mentioned Rules and Regulations, Section 2, which deals with demotions and removals.

"The County Board feels that the power to appoint, demote or remove an employee lies solely within tne

power of the County Board. Therefore, the County Board refuses at this time to discharge Mrs. Olga Welch, or recognize your authority to do so.''

On the 9th the commissioner addressed the following letter to Mrs. Welch:

''Inasmuch as the Maricopa County Board of Social Security and Welfare has failed to function as directed by the State Board of Social Security and Welfare and the Commissioner, I, as the executive head of the State Department of Social Security and Welfare, hereby advise you that your services as social work supervisor are terminated as of this date, and your name has been removed from the payroll of this Department upon the ground of incompetence and negligence in the discharge of your duties, and more specifically for the following reasons:

''First: During the months of November and December, you certified to the Works Progress Administration certain individual employees known to you to be on the payroll of the Maricopa County Board of Social Security and Welfare as being eligible to receive clothing distributed by the Works Progress Administration;

''Second: Your services as a social work supervisor are no longer of any value to the county or the State Board of Social Security and Welfare by reason of the fact that the Works Progress Administration has advised us that they will no longer accept your signature as a certifying officer of this organization; . . . ''

Plaintiff denied the authority of the commissioner to discharge her, and thereafter the state board, on her presentation of a salary claim for the first half of January, 1939, based on the monthly salary above referred to, refused to approve it for any services rendered after January 9th, whereupon this action was brought.

It is the position of plaintiff that the county board has the sole right under section 10, subdivision (d),

to make the appointments of such employees as are necessary for the discharge of the duties of the board, subject only to the regulations laid down by the state board under section 8 of the act, and that removals of such employees can be made only by the county board, in pursuance of such regulations for removals as are established by the state board under section 8, *supra*.

It is apparently the contention of the defendants that the state board has the unfettered discretion to remove any employee of the Social Security Department at will, and particularly employees of the county boards, by virtue of subdivision (b), section 10 of the act. The determination of the issue depends upon the construction of certain sections of the act. These sections read as follows:

"Section 8. *Personnel.* The [state] board shall have the power and it shall be its duty to:

"(a) Classify all positions in the administration of this Act (except that of executive director).

"(b) Fix standards for all positions included in the classification.

"(c) Formulate salary schedules for the services so classified.

"(d) Provide for the fair and impartial selection, appointment and retention of all personnel (except the executive director), on the basis of open competitive merit examinations; notice of such examinations shall be published in the press of the state at least thirty days before the holding thereof; and provide for a fair and impartial system of separation from service through resignation, retirement, or removal. Provided that all persons assigned to either supervisory or case work in any particular county shall be *bona fide* residents of the state for at least one year prior to such appointment.

"(e) Provide for annual merit ratings of all employees in the services so classified and provide for the use of such ratings in connection with promotions, layoffs, discipline, removal and salary increments."

"Section 10. *County Boards*. . . . (b) The several county boards shall be under the direct supervision and control of the State Department, and shall perform such duties as may be prescribed by the State Board. . . .

" (d) Members of the county boards shall, immediately after this appointment, organize by the selection of a chairman. Each county board may employ a full time secretary, who shall maintain an office in the county seat in quarters assigned or provided by the board of supervisors, and such other employees as may be necessary for the discharge of the duties of the board."

 We think the controlling portion of the act in the present case is section 8. It is clear to us therefrom that it was the intention of the legislature to provide for a very comprehensive merit system of appointment and discharge of all employees in the social security department of the state, which of course includes the county boards, with the exception of such officers or employees as were specially exempted from such system. In so doing, they were directed to provide not only for a fair and impartial selection and appointment of all personnel on the basis of open and competitive merit examinations, but they were also required to provide for a fair and impartial system of separation from service, through resignation, retirement or removal. One was as important and essential as the other. No employee could be appointed who did not comply with the regulations for competitive examinations set up by the board, and we think it was equally intended that no one should be removed except in pursuance of a fair and impartial system of separation from service. Such a system, in our opinion, must necessarily include (a) specific reasons for removal, and (b) a reasonable hearing before some designated and proper authority as to whether the party whose removal was sought fell within the rea-

sons for removal set forth in the regulations established by the board.

■■ It does not appear from the agreed statement of facts that the attempted removal of plaintiff was predicated in any manner upon a fair and impartial system of separation, set up by the board previous to such removal, but rather that the removal was based solely on the authority of subdivision (b), section 10, *supra*. While it is true that the county boards are under the direct supervision and control of the state board, nevertheless that control must be exercised by the state board in accordance with the manner set forth in the act. It does not appear from the statement of facts that plaintiff's removal was made in this manner, and we think, if this be the case, it was done without authority of law.

The peremptory writ of *mandamus* will issue as prayed for.

ROSS, C. J., and McALISTER, J., concur.