[Civil No. 3920. Filed March 13, 1939.]

[88 Pac. (2d) 83.]

THE CITY OF PHOENIX, a Municipal Corporation, Appellant, v. CHARLES SITTENFELD, Appellee.

Mr. I. A. Jennings, City Attorney, Mr. Hess Seaman and Mr. Richard F. Harless, his Assistants, for Appellant.

Mr. Geo. T. Wilson and Messrs. Minne & Sorenson, for Appellee.

LOCKWOOD, J.—This is an appeal by the City of Phoenix, a municipal corporation, hereinafter called defendant, from a judgment in favor of Charles Sittenfeld, hereinafter called plaintiff. The facts of the case are not in dispute, and may be stated as follows: Plaintiff was for some time prior to August 31, 1934, employed as a policeman by defendant. On that date he was temporarily laid off from his employment because the police department of defendant was operating in excess of its budget. He made application before the civil service board of said city for a hearing upon the order laying him off, but the board, notwithstanding this request, refused to grant it, and on Sep-

tember 7th affirmed the lay off. He immediately filed action in the superior court of Maricopa county, applying for a writ of *certiorari* to review the order of the board. On December 29th, 1934, the court found that the civil service board did not follow the charter, ordinances and the civil service rules and regulations of defendant in approving the temporary lay off of plaintiff and denying him a hearing; that he was not at the time the lowest ranking member in seniority in the personnel of the police department, and, in substance, that the board had not jurisdiction to lay off plaintiff as it did. The judgment was that the order of the civil service board made September 7, 1934, approving the lay off of August 31, 1934, be set aside, vacated and annulled, and all proceedings and acts of the defendant and of the board held and done thereunder were quashed and held for naught. No appeal was ever taken from this judgment and it eventually became final, but notwithstanding the defendant and board refused to reinstate plaintiff until the 7th of May, 1935, and refused to pay him any salary from September 1, 1934, up to May 7, 1935. The prayer of the complaint herein was for the amount alleged to be due plaintiff as salary during the time he was so laid off, and the court rendered judgment in his favor as prayed for, less one hundred dollars which plaintiff had earned during his suspension as aforesaid, whereupon this appeal was taken.

There are four assignments of error raising certain legal questions, which we shall consider in their order. The first is that in discharging employees of a municipality, the officers thereof act in a governmental capacity, and no liability in damages rests upon the defendant city for their erroneous or wrongful actions; that the civil service board is a *quasi*-judicial body for whose erroneous or wrongful actions defendant is not

liable in damages, and that there is no ordinance, charter or statute requiring the city to pay the salary of an employee removed from his employment in violation of the Civil Service Law during the period between his removal and reinstatement. Summed up in plain language, the contention is that the officers of a municipality operating under a civil service law may illegally remove from his position any employee of the city, and that notwithstanding such illegal removal the employee has practically no recourse against the city for his salary during the time of his removal.

The merit system of selection and retention in their position of public employees, or what is commonly referred to as civil service, was first introduced into the United States by the federal government in 1886, and was gradually extended in its scope to include many states and municipalities. Phoenix was among the first of our cities to adopt such a system, and this court, in the case of *Paddock* v. *Brisbois,* 35 Ariz. 214, 224, 276 Pac. 325, 329, in speaking of it, said:

"That a [civil service] commission, with real power in the matter of appointments, promotions, demotions, and discharges, would be a fine adjunct to the city government, we have no doubt. As is said in the well-considered case of *People* v. *McCullough,* 254 Ill. 9, 98 N. E. 156, Ann. Cas. 1913B, 995:

" ' . . . Positions in the public service are not the personal or political perquisites of any officer or party, and ought not be divided, after a political campaign, as so much loot of actual warfare, but . . . competency, merit, and fitness ought to be the standard for all appointments or promotions in the public service.' "

The original system adopted by Phoenix was weak in many points, and the voters of the city, therefore, in 1933 amended the civil service ordinance which had been previously in effect, and thus placed it beyond the

power of any of the city officials to change the law adopted by the voters themselves. Section 1, subdiv. 8, art. 4, pt. 1, Const. of Arizona. This ordinance is No. 715, and its material portions read as follows:

"Section 3. The Civil Service Board shall prescribe, amend and enforce rules for the classified service which shall have the force and effect of law after the same shall have been presented to the City Commission and by it approved. . . .

"The rules shall provide: . . .

"(Subdiv.) 12. For discharge or reduction in rank or compensation after appointment or promotion is complete only after the person to be discharged or reduced has been presented with the reason for such discharge or reduction, has been allowed a reasonable time to reply thereto in writing, and has been given a public hearing before the Board if demanded in such written reply. The reason, reply and Board's action shall be filed with the Board as a public record.

"(Subdiv.) 13. For reinstatement with or without accrued pay in the discretion of the Board, of persons in the classified service who have been suspended or discharged without pay, whenever the Board shall disapprove such suspension or discharge."

In pursuance of section 3, *supra,* the civil service board adopted certain rules and regulations, which were approved by the city commission on July 12, 1933, and which, therefore, were binding upon the board until such regulations were legally changed. Rule 21 reads, so far as material to this case, as follows:

"In the event of a reduction in the number of employees holding positions under the classified service in any department for purposes of economy or at all, then those employees having the highest rank in point of length of service and efficiency in the service shall be retained and those having the lowest in those respects shall be the ones to be released from the service; and any classified employee ordered released because of a reduction in the number of employees shall have the right to be heard before the Civil Service

Board as in the case of other discharged employees, whereupon, in the event the Civil Service Board shall find that the reduction in numbers could be effected by the release of another employee of lesser rank considering length of service and efficiency, the Board shall cause the complaining employee to be retained or reinstated and make such further order as shall seem equitable and proper. . . . ''

It is evident from the findings of the court in the *certiorari* proceedings above referred to that the board, in approving the lay off of plaintiff, violated the ordinance in that it gave him no hearing in regard to the lay off, but also in the fact that although he was senior to other employees of the department they were continued on duty when he was laid off, contrary to rule 21, *supra*.

The board, of course, is bound to act in accordance with the ordinance which created it, and the rules and regulations which it has established under such ordinance, and if it removes an employee contrary to such rules the removal is void and was properly declared void by *certiorari* in the judgment aforesaid. *Welch* v. *State Board of Social Security and Welfare, ante,* p. 167, 87 Pac. (2d) 109, decided February 13, 1939. Notwithstanding this fact, and the fact that he reported regularly for duty during the time of his lay off, the defendant refused to reinstate him until May 7, 1935, and refused to pay him salary for the time he was laid off, justifying its conduct on the theory assigned in the first proposition above set forth.

There are many cases where the question of whether a *de jure* officer is entitled to recover salary for the time during which the office to which he is rightfully entitled is filled by a *de facto* officer who has actually drawn the salary for the position has arisen, and the authorities are in hopeless conflict. Most,

though not all, of these cases have arisen before the adoption of civil service rules for public employment, and in probably the greater number of them it has been held that the salary may not be recovered. The cases so holding are collected and discussed at great length in *State* v. *Kansas City*, 319 Mo. 705, 7 S. W. (2d) 357, 59 A. L. R. 95. While it is true that that particular case involved a position held under civil service rules, most of the cases cited and discussed therein arose under different situations, generally where the municipality or state and their officers had taken no part in creating the situation which caused the conflict, and the contest was in reality between the two rival claimants. On the other hand, there is a respectable line of cases, although the minority in number, which hold that notwithstanding the municipality may have paid a salary to the *de facto* officer, the *de jure* officer is nevertheless entitled to recover his salary. *Sweetnam* v. *Los Angeles Police Commrs.*, 56 Cal. App. 644, 206 Pac. 102; *Everill* v. *Swan*, 20 Utah 56, 57 Pac. 716; *Cawthon* v. *Houston*, 31 Tex. Civ. App. 1, 71 S. W. 329; *Cleveland* v. *Luttner*, 92 Ohio St. 493, 111 N. E. 280, Ann. Cas. 1917D 1134; *Bailey* v. *Edwards*, 47 Mont. 363, 133 Pac. 1095; 43 C. J. 806. We prefer, however, to determine the case on what seems to us to be the better rule of public policy involved rather than the numerical preponderance of authority.

All merit systems, which can properly be so called, must contain two essential features, (a) the employee must be chosen on the basis of his efficiency to perform the particular work determined by some manner of a fair and impartial test, and (b) his tenure in office must be secured against ordinary removal except for some predetermined cause and charges upon which he may have a fair and impartial hearing. The one is as

important as the other, and any system which fails to include these two essentials is not a true merit system. It would seem to follow as a corollary that if it be held that while an employee protected by civil service rules may secure his restoration to office by a long and tedious lawsuit, he must lose the salary for the period during which he was unjustly excluded, the tenure assured him by the system is like the well-known apples of Sodom—fair to the sight but crumbling to sterile ashes at the touch. In order to insure real protection to a civil service employee, it is necessary that when it appears that he has been illegally deprived of his position, he should be reimbursed for the loss of the salary which accompanies the position. We think that the principle of *respondeat superior* should, and does, apply in cases of this kind. A municipal corporation, like any other corporation, can act only through its officers and agents, and should be, and is usually, responsible for the acts of those agents. There is, of course, the exception that it is generally held as a matter of public policy that when a municipal corporation is acting in its governmental capacity, it is not responsible under the doctrine of *respondeat superior* for the torts of its agents and employees. But we think that since the very purpose of a Civil Service Law is to prevent the corporation from depriving its employees of their positions except in conformity with the law, the better rule is that the corporation must respond for a violation of such law, even though the particular illegal removal was made by its officers and agents in the performance of a governmental function. We hold, therefore, as a matter of public policy that where the law provides for a merit system, and an employee who comes under that system is wrongfully removed from his position, he is entitled to recover from his employer, in the absence

of some statute expressly forbidding it, the salary or wages which he would have received in the absence of such illegal removal, and that the municipality may not shelter itself behind the plea that some *de facto* officer has already drawn an equivalent salary, or that the removal was the fault of the governing officers of the municipality, and not of the municipality itself in its corporate capacity. Nor do we think that this rule is changed by subdivision 13 of section 3, *supra.* This, by its express terms, applies only to cases of suspension or discharge by the executive authority of which the board *disapproves,* and does not apply to cases where the board has *approved* an illegal suspension or discharge.

The fourth assignment of error is covered by what we have said of the first assignment. This leaves for consideration the second assignment, which is that the statute of limitations had run against most of the claim.

 It is urged on behalf of defendant that if plaintiff was entitled to salary during the period from September 1, 1934, to May 7, 1935, the liability of the city was one created by statute and, therefore, fell within subdivision 3 of section 2058, Revised Code of 1928, which reads as follows:

"There shall be commenced and prosecuted within one year after the cause of action shall have accrued, and not afterward, the following actions: . . .

"3. upon a liability created by statute, other than a penalty of forfeiture,"

and that since the salary of plaintiffs was payable every two weeks under section 2799, Revised Code of 1928, the statute of limitations began to run against each two weeks' salary as it became due. In support of this defendant cites *Crawford* v. *Hunt,* 41 Ariz. 229, 17 Pac. (2d) 802. We think the case cited is decisive

on the question as to when the statute of limitations begins to run as against a claim of salary made by a public official, unless it is taken out of the rule by the circumstance we shall now discuss.

It appears from the record that plaintiff was discharged from his position on August 31st, and that defendant ceased to pay him his salary from that time on, on the claim that he was no longer an employee. If the contention of defendant were true, of course he was entitled to no salary after the date of his discharge. Plaintiff, on the other hand, insisted that defendant had no right to discharge him as and when it did; that he was still legally an employee and was entitled to draw his salary as such. The question as to whether he was entitled to any salary at all obviously depended upon the correctness of the respective contentions of plaintiff and defendant as to whether he was still an employee or not. This plaintiff immediately endeavored to have determined in the proper manner by an application for a writ of *certiorari,* which was decided in his favor on December 29, 1934.

It is generally held that where the decision in a pending action is practically conclusive as to the nature and extent of a party's rights, and where his success thereunder is a prerequisite to his right to maintain a new action, the statute does not begin to run as to the new action until the determination of the pending suit, which decides whether the new right of action exists. 37 C. J. 812, and cases cited. We think under this rule the statute of limitations did not run against any portion of plaintiff's claim for salary until at least the 29th day of December, 1934, when the trial court held that he had been illegally removed from his position. But if the statute began to run at that date so far as the salary already accrued was

concerned, and thereafter every two weeks, it is plain that almost all of plaintiff's complaint would be barred if the one year statute of limitations is applicable, for he did not file his action for back salary until April 15, 1936. Had defendant reinstated plaintiff immediately after the rendition of the judgment of December 29th, we think there can be no doubt that this would be considered as an acceptance by plaintiff of such judgment as final, and that plaintiff's right to sue for his salary would have commenced at that time. Defendant, however, failed to refuse to reinstate plaintiff then, as required by the judgment, and since it had the right of appeal for six months after such judgment, plaintiff could not determine whether it intended to exercise that right until the time for appeal had expired, or until defendant had shown its intention to accept the judgment as final, which it did on May 7, 1935, by reinstating plaintiff. Had he brought suit for his back salary at any time before this date, and had defendant exercised its unquestioned right of appeal during that period, undoubtedly the court in which plaintiff's salary suit was filed would have deferred a hearing thereon until after the determination of the appeal, for it could not yet be said whether plaintiff was an employee of defendant or not.

We think in logic and reason under these circumstances the statute of limitations did not begin to run against plaintiff's claim for salary until the 7th day of May, 1935, and this being the case, even if his contention that the proper statute of limitations is not one year but three, as a contract not evidenced in writing cannot be upheld, he would nevertheless be within the one year statute.

The judgment of the superior court is affirmed.

McALISTER, J., concurs.

ROSS, C. J. (Dissenting).—I dissent. The action is for salary from September 1, 1934, to May 7, 1935, inclusive. It was commenced April 15, 1936, eleven months and eight days after the last item of salary accrued. Subdivision 3, section 2058, Revised Code of 1928, provides that limitation commences to run one year after the right of action accrues, when the liability is created by statute.

The right of the city to employ plaintiff must be found in its charter or ordinances and, for that reason, the liability may be regarded as statutory. We have held that a city charter, enacted by a vote of the people, is as much a law as if enacted by the legislature. *Buntman* v. *City of Phoenix,* 32 Ariz. 18, 255 Pac. 490. Section 4876, Id., as amended by chapter 84, Laws of 1935, requires municipalities, among others, to have two paydays each month for the payment of wages to their employees.

If this statute applies, the plaintiff's first half month's salary accrued on the 15th day of September, 1934. If it does not apply, then, since plaintiff, according to his complaint, was employed at a salary of $153 per month, his first monthly salary accrued September 30, 1934. When the action was commenced it was barred, except for the last half of April and the first seven days of May, 1935.

The *certiorari* proceeding did not prevent the running of the statute. In the first place, such proceeding determined nothing that might not have been determined in *mandamus.* It is apparent that the civil service board, in laying plaintiff off without a hearing as provided by its rules, acted without power or jurisdiction and, if that be true, the board's order was void and of no effect. An action for debt, such as the present action, could have been maintained for each half month's or monthly salary as it fell due at any

time within one year thereafter, regardless of the board's order. The *certiorari* proceeding did not determine anything except the civil service board's lack of jurisdiction to make the order laying plaintiff off. There was no contest in that proceeding between a *de facto* and a *de jure* officer as to which was entitled to the salary. The only way that question could possibly be determined was in *mandamus* or a direct action for the salary, either of which was more speedy and adequate than *certiorari*. A party cannot indulge in piecemeal litigation, that is, bring several actions when one is efficient to vindicate his rights, and assert a suspension of the statute of limitations as a result of his litigious actions.