404 P.2d 414

Richard A. KENDALL and Robert Moughler, Petitioners,

v.

Richard MALCOLM, City Manager of the City of Scottsdale, and the City of Scottsdale, a Municipal Corporation, Respondents.

No. 8648.

Supreme Court of Arizona,

En Banc.

July 16, 1965.

330

Lawrence H. Doyle, Jr., Phoenix, Donald Maxwell, Scottsdale, P. Richard Meyer, Tempe, for petitioners.

Osmond Burton, Jr., Scottsdale, Johnson, Shelley, Roberts & Riggs, Mesa, for respondents.

STRUCKMEYER, Vice Chief Justice.

Richard A. Kendall and Robert Moughler petitioned this Court for an alternative writ of mandamus to test the legality of their discharge as police officers of the City of Scottsdale. We issued the alternative writ on the 2nd day of April, 1965. It is now our conclusion that the alternative writ should be quashed.

Prior to January 11, 1965, petitioners were employed as police officers in the City of Scottsdale. On that day, they were discharged by the acting city manager for refusal to answer questions put to them by the Chief of Police of Scottsdale relative to an official department investigation. Petitioners requested a hearing before the Scottsdale Personnel Board which, on February 1, 1965, revoked petitioners' dismissal. Thereafter, the City of Scottsdale refused petitioners' demands that they be reinstated, resulting in this petition for mandamus. The sole issue before this Court is whether the personnel board has the power to revoke a dismissal ordered by the city manager.

Article 3, § 3 of the Charter of Scottsdale provides:

"The city manager shall * * * have power and shall be required to:

* * * * * *

"(2) Appoint and when necessary for the good of the service remove all officers and employees of the city except as otherwise provided by this Charter * * *."

By Article 4, §§ 2, 3 and 4 of the charter, the city clerk, city treasurer and city attorney serve at the pleasure of council. Hence the city manager, by Article 3, § 3, may remove all other employees including petitioners except those named officers.

Petitioners, however, rely on Article 4, § 5 of the charter providing:

"The city council shall create a civil service board within one (1) year after the adoption of this Charter by the voters.

* * * * * *

"The civil service board shall prescribe, amend and enforce rules for the employees of the town, except those elected by the people and also excluding all offices and department heads. These rules shall have the effect of law after they have been approved by the city council."

The charter was adopted on October 31, 1961. Thereafter the city council adopted Ordinance No. 172 entitled, "AN ORDINANCE * * * FOR THE ADOPTION OF A PERSONNEL SYSTEM AND THE APPOINTMENT OF A CIVIL SERVICE BOARD TO BE KNOWN AS THE SCOTTSDALE PER-

'SONNEL BOARD; * * *." Ordinance No. 172 provides, in part:

"The functions of the Board shall be:

"3.1 * * * to hear appeals submitted by any person in the classified service relative to any disciplinary action, dismissal, demotion or alleged violation of this ordinance or the personnel rules and to certify its findings and recommendations as provided in this ordinance.

\*　　\*　　\*　　\*　　\*　　\*

"3.7 The finding and decision of the Board shall be final, and shall be certified to the official from whose order the appeal is taken, and shall forthwith be enforced and followed by him."

Plainly the City of Scottsdale's Ordinance No. 172 is inconsistent with the charter, Article 3, § 3. Ordinance No. 172 itself recognizes the inconsistency for by Article 11 it provides:

"The City Manager, in whom is vested the power to appoint, make transfers, promotions, reinstatements, lay offs, and to suspend or dismiss employees, shall retain such power *subject to the provisions of this ordinance and the personnel rules.*" (Emphasis supplied.)

The precise question here presented was raised in Paddock v. Brisbois, 35 Ariz. 214, 276 P. 325, and answered in this fashion:

"There can be no question of the power of the city commission to establish by ordinance a civil service commission and prescribe its duties, that power being conferred by subdivision 58, section 2, chapter 4 of the charter, supra. But does this power extend to taking from, or authorize the civil service commission to take from, officers of the city powers vested in them by the charter and the conferring of such powers on others? In other words, the charter having conferred the power of appointing and removing officers and employés of the city in the city manager, can the city commission, under the authority of said subdivision 58, establish a civil service commission and confer on it the power to defeat the city manager's charter powers of dismissal, by requiring him to obtain the consent of the civil service commission before exercising such power?

"We are of the opinion that the ordinance establishing the civil service commission and the rules formulated thereunder, so far as they undertake to deprive the city manager of the power to dismiss officers and employés that the charter empowers him to discharge, assume a power not delegated by the charter to the city commission.

\*　　\*　　\*　　\*　　\*　　\*

" 'It is very familiar law that an ordinance is void which conflicts with the

charter of the municipality. A charter is, so to speak, the municipal organic law which no ordinance may override.' Kemp v. City of Monett, 95 Mo.App. 452, 69 S.W. 31.

"Moreover, the charter of Phoenix, in section 1, chapter 4, supra, prohibits the city commission from legislating on subjects forbidden it, *inter alia*, 'by * * * the provisions of this charter.' The charter powers, under the Constitution, are conferred on the city by the people of the city, and they in their wisdom have placed the power to discharge officers and employees in the city manager. Section 1, chapter 6, supra. This power to discharge given to the manager by the charter is a prohibition of its exercise by any other person or officer and stands as the paramount law on that subject until changed in the manner provided by the charter.

\* \* \* \* \* \*

"But it may be said that, since the charter authorizes the city to establish a civil service commission and prescribe its duties, the city commission did not exceed its powers in providing by ordinance that no officer or employee could be discharged, except with the consent of the civil service commission, after formal accusation and trial before it. The power conferred by the charter on the city's legislative organ to create a civil service commission and fix its duties necessarily, under the canons of construction, authorizes an organization that can lend some efficient aid to the municipality in substituting the 'merit system' for the 'spoils system'—the dominant purpose of the civil service. But the extent that such organization may be clothed with power by the city is restricted and limited by the city's organic law. The mere authorization to set up a civil service for its officers and employees does not by implication empower the city law-making body to override the charter or to transfer the powers vested in its managing officer to the civil service commission.

\* \* \* \* \* \*

"The civil service commission as now established cannot compel the city manager to keep or reinstate appellees. Its investigations, reports, and decisions in the matter of dismissals are only advisory, and in aid of a proper, equitable, and just exercise of that power by the city manager. He may follow or disregard the commission's findings, just as he chooses. If it is desirable that the commission's decisions be binding on the city manager, the qualified electors can accomplish that result by amending the charter * * *." Id. at pp. 219, 220, 221, 222, 225, 276 P. at pp. 327, 328, 329.

Petitioner contends that the authorization in Article 4, § 5 to establish a civil service commission implies that it will be clothed with all the powers usually granted to such bodies. But the rule is that administrative officers and agencies have no common law or inherent powers, Gardner v. Ewing, D.C., 88 F.Supp. 315; Howell Sch. Bd. Dist. No. 9 v. Hubbartt, 246 Iowa 1265, 70 N.W.2d 531; State ex rel. Adams v. Burdge, 95 Wis. 390, 70 N.W. 347; Kasper v. O'Connell, 38 Misc.2d 3, 237 N.Y.S.2d 722. We have held that the Corporation Commission of Arizona has no implied powers. Commercial Life Ins. Co. v. Wright, 64 Ariz. 129, 166 P.2d 943. The powers and duties of an administrative agency are to be measured by the statute creating them. Pressley v. Industrial Commission, 73 Ariz. 22, 236 P.2d 1011; Magma Copper Co. v. Arizona State Tax Commission, 67 Ariz. 77, 191 P.2d 169. The only implication that can be derived is that the charter means exactly what it says; namely, that the power to appoint and discharge other than the stated officers is lodged in the city manager. Since the Personnel Board of the City of Scottsdale has no recognized common law powers, it cannot be assumed from the authority alone to create such a board that it could in any of its functions supercede any of the powers granted specifically in the charter. The personnel board can do no more than make recommendations for the appointment and removal of the officers and employees of the city. State ex rel. West v. City of Seattle, 50 Wash.2d 94, 309 P.2d 751.

Petitioners urge that the City of Scottsdale and the City Manager may not attack the civil service system created by its own ordinance; but we think in an action such as this, where petitioners are seeking relief against the action of the City of Scottsdale and the manager, there may be asserted the unlawfulness of the city ordinance. The charter of a city is its organic law bearing the same relation as the constitution of the state bears to its statutes. 5 McQuillen, Municipal Corporation, 3d Ed., § 1519, p. 93. We have no doubt that the invalidity of an ordinance may be raised by any interested party to litigation where it is asserted that lawful action is dependent on or derived from the organic law.

The alternative writ of prohibition heretofore issued is quashed.

LOCKWOOD, C. J., and UDALL and McFARLAND, JJ., concur.

BERNSTEIN (dissenting).

The majority is destroying an important protection for city employees provided for by the City of Scottsdale civil service system. Civil service was fathered by President Grover Cleveland to do away with the spoils system of employment and discharge

of public employees. Its purposes have been well put by the Court of Appeals of New York:

> "The civil service provisions of the Constitution and of the law were intended *as a protection for the public* and all the employees in the civil service as well as security for the individual employee." (Emphasis supplied). Wood v. City of New York, 274 N.Y. 155, 161, 8 N.E.2d 316, 318.

The majority does not question the validity of a civil service system under which certain classes of employees may only be fired on recommendation of a civil service board. Welch v. State Board of Social Security and Welfare, 53 Ariz. 167, 87 P.2d 109. The majority reaches its result, however, by misapplying and refusing to give effect to the provisions of the City of Scottsdale charter. The pertinent provisions read:

> "The city manager shall * * * have power and shall be required to:
>
> "(2) Appoint and when necessary for the good of the service remove all officers and employees of the city *except as otherwise provided by this charter* * * * (Emphasis supplied). Art. 3, Sec. 3 Charter of Scottsdale.

The majority reaches its result through failing to give effect to the words of the charter "except as otherwise provided."

And what is otherwise provided in the charter?

> "The city council shall create a civil service board within one (1) year after the adoption of this charter by the voters.
>
> \* \* \* \* \* \*
>
> "The civil service board shall prescribe, amend and enforce rules for the employees of the town, except those elected by the people and also excluding all offices and department heads. These rules shall have the effect of law after they have been approved by the city council." Art. 4, Sec. 5 Charter of Scottsdale.

"Otherwise provided," I think, means that where the charter specifically provides for a civil service board with power to provide and enforce rules for certain classes of employees, the civil service board may of its own choosing and subject to the approval of the council, adopt rules having the effect of law. George v. Arizona Corporation Commission, 83 Ariz. 387, 322 P.2d 369; City of Phoenix v. Sittenfeld, 53 Ariz. 240, 88 P.2d 83; Cox v. Shreveport Packing Co., 28 So.2d 617 (La.App.1946), affd. 213 La. 53, 34 So.2d 373.

The majority quotes extensively from Paddock v. Brisbois, 35 Ariz. 214, 276 P. 325. But that opinion does not square with the facts in the instant case. In Brisbois the court held the ordinance to be actually in conflict with the charter and therefore

invalid. In Brisbois the then charter of the City of Phoenix stated that the city manager·alone had the power to hire and fire employees. In the instant case the city manager has the power to hire and fire employees "except as otherwise provided in this charter." And the method otherwise provided is by the setting up of a civil service board and the adoption of rules that have the effect of law when approved by the city council which the city of Scottsdale has done by Ordinance No. 172.

There is no question but that the petitioners were subject to the power of the board and not subject to the power of the city manager, and for the foregoing reasons I respectfully dissent.