829 P.2d 846

Doris Jean CHALMERS, Stanley Rosenberg and Herman Jay Beeck, Plaintiffs/Appellants,

v.

CITY OF TUCSON, a municipal corporation; Thomas J. Wilson, Manager of the City of Tucson, and Administrative Hearing Office of the City of Tucson, Defendants/Appellees.

No. 2 CA–CV 91–0112.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 29, 1991.

Reconsideration Denied Dec. 11, 1991.

Review Denied and Cross–Petition for Review Denied May 19, 1992.

O'Dowd, Burke & Lundquist, P.C. by Bruce A. Burke, Law Offices of John S. O'Dowd by John S. O'Dowd, Tucson, for plaintiffs/appellants.

Frederick S. Dean, Tucson City Atty. by Merle Joy Turchik, Tucson, for defendants/appellees.

OPINION

HOWARD, Judge.

This is an appeal from the granting of summary judgment in favor of appellees. Appellants have raised three issues, one of which is dispositive—does the Tucson Charter vest exclusive original jurisdiction in the Tucson City Court to adjudicate and impose penalties for violations of city ordinances? The trial court ruled, on cross-motions for summary judgment, that the city charter did not vest exclusive original jurisdiction. We disagree and reverse.

Appellants are residents of the City of Tucson who were assessed fines by the Tucson City Administrative Hearing Office on diverse occasions from 1985 through 1989. On June 26, 1989, appellants filed this special action in the superior court.[1] Appellants initially sought injunctive and restitutionary relief for themselves and others similarly situated. Subsequently, both sides moved for summary judgment and stipulated that all class action and damage issues would be deferred pending the trial court's ruling on these motions.

Appellants have been issued citations alleging various civil infractions under the Tucson Code. Appellants Rosenberg and Chalmers have been cited for civil infractions of local Tucson parking ordinances. Of the more than 63 parking citations issued to Rosenberg from 1985 through

1. Appellants did not file a notice of claim with the city until June 14, 1990. We need not decide whether the claims were timely filed since that issue will still be before the trial court.

1990, he has either been found responsible on or paid 59 of them. Chalmers received a citation for illegally parking overtime on March 24, 1989. Following a hearing on June 27, 1989, default was entered and $20 assessed against her. In December 1988, appellant Beeck was issued a citation for the civil infraction of owning a barking dog in violation of the Tucson Code's noise ordinance. A technical division administrative hearing officer found Beeck responsible for the civil infraction and assessed a $100 fine against him. Beeck did not appeal the decision.

In 1983, the city council passed an ordinance creating the "Administrative Hearing Office," which added §§ 28–1 through 28–20 to Chapter 28 of the Tucson Code. The office was created because there was "a need for an efficient and economical means for certain Code violations to be heard and decided in a forum familiar with the technical aspects thereof ..." Tucson Code, § 28–1. The office created by the code consists of hearing officers appointed by the city manager. The office has a technical and a nontechnical division. § 28–2. The technical division was given exclusive jurisdiction to hear and decide complaints alleging violation of Tucson Code provisions relating to: address numbering, administrative, building, dangerous building, electrical, fire, housing safety, outdoor lighting, mechanical, plumbing and gas, sign, solar system, swimming pool and zoning. Tucson Code § 28–4.

Under Article II an action can be commenced either by the issuance of a citation by an employee responsible for the enforcement of any of the codes enumerated in § 28–4(1) or by the city attorney filing a civil complaint with the office. §§ 28–5(1) and 28–5(2). Article II provides for a hearing and the entry of a written judgment. Section 28–12 provides for the imposition of penalties which can be a fine of not less than $50 nor more than $1,000 per violation or any other order deemed necessary in the hearing officer's discretion, including a correction or abatement of the violation. Section 28–13 provides that any civil fine not paid within 30 days after judgment constitutes a lien against the defendant's real property which may be filed with the county recorder's office. It further provides that the city attorney may commence a legal action in a court of competent jurisdiction to collect the fine. When the hearing officer orders correction or abatement of a violation and there is no compliance within 30 days the violation is deemed a public nuisance and the city attorney may seek injunctive relief in a court of competent jurisdiction. Section 28–14 allows the appeal of any judgment by way of special action to the superior court.

Article III contains provisions which give the nontechnical division exclusive jurisdiction to hear and decide complaints alleging violation of all parking ordinances under the code. It provides that "an action may be filed under this article by the issuance of a citation." § 28–16. Under § 28–19 the person cited is entitled to a hearing and may contest the citation. Section 28–19(5) provides for the imposition of a fine of $12. In a contested citation the person assessed with a fine can appeal to the city court where he is entitled to a de novo trial. § 28–20.

■ We begin our discussion of the applicable law with the propositions that Tucson's Charter is its organic law, *Kendall v. Malcolm*, 98 Ariz. 329, 404 P.2d 414 (1965), and the city's legislation must be consistent with the framework established by the charter. *Paddock v. Brisbois*, 35 Ariz. 214, 276 Pac. 325 (1929). An ordinance which conflicts with a provision of a city charter is void. *City of Phoenix v. Yates*, 69 Ariz. 68, 208 P.2d 1147 (1949).

The provision of the Tucson City Charter at issue is Chapter XII, sec. 2, which provides:

**Sec. 2. Jurisdiction generally.**
*Said Court shall,* within the territorial limits of said city, *have and exercise jurisdiction* as follows:

It shall have and exercise exclusive original jurisdiction of all proceedings of a criminal nature for the violation of any ordinance of said city, and *of every action of a civil nature for the enforcement of a penalty or the recovery of a*

*penalty, or forfeiture imposed by any ordinance of said city for violation thereof, or for neglect to perform any duty by any ordinance imposed, and of every action for the collection of any license, fine, or penalty due from any person to said city, and required to be paid, or which is due and collectible under the ordinance[s] of said city.*

(Emphasis added.) The city contends this section requires that all civil actions brought by the city to collect an unpaid fine must be filed in the city court but does not require that the city court make the initial determination whether a civil infraction was committed or assess the proper fine in the first instance.

■■■ The city rests this contention on several bases. First, it relies on the plain language of the charter provision which it claims supports its position. We do not agree. The plain language of the charter gives the city court exclusive jurisdiction over the following: (1) proceedings that are criminal in nature; (2) every action of a civil nature for the enforcement of a penalty, or the recovery of a penalty or forfeiture for violating a city ordinance; (3) every action of a civil nature for the enforcement of a penalty, or the recovery of a penalty or forfeiture for neglecting to perform any duty imposed by an ordinance; and (4) every action for the collection of any license, fine, or penalty due from any person to the city which is required to be paid or which is due and collectible under the city's ordinance. The actions before both the technical and nontechnical divisions are civil actions. Any action for the enforcement of a penalty is, except where the charter states to the contrary, within the exclusive jurisdiction of the city court. A penalty has been described as an elastic term with many different shades of meaning involving the idea of punishment, corporal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment. *Allred v. Graves*, 261 N.C. 31, 134 S.E.2d 186 (1964). The fines assessed here were penalties.[2]

In spite of the clear language of Chapter XII, sec. 2, the city contends that one must look at the entire charter to ascertain the provision's meaning and claims that if this is done, it is clear that its position is correct. It points out that Chapter VII, sec. 1(1), empowers the mayor and council to punish any member or any other city officer by a fine not exceeding $50 for disorderly or contemptuous behavior in their presence; Chapter VII, sec. 1(8), empowers the mayor and council to employ a pound-master who shall have the sole authority to order the destruction or sale of animals within the city; and Chapter XXII establishes the civil service commission whose final and binding administrative proceedings result in decisions as to whether permanent city employees have been disciplined or discharged only for just cause as required by the Tucson Code. It contends that the foregoing sections contemplate initial imposition of civil penalties by parties other than the courts, demonstrating that the charter reserved broad powers to the city court for criminal matters but circumscribed those functions far more narrowly when it came to the sort of civil matters at issue here. Assuming arguendo that those provisions impose penalties, this shows that the framers of the city charter were quite specific in carving out from the jurisdiction authorized by Chapter XII, sec. 2, those areas which were not to fall under the exclusive jurisdiction of the city court.

Lastly, the city contends that the application of appellants' reading of Chapter XII, sec. 2, would lead to preposterous results because it would in effect eliminate all valid administrative bodies that interpret and apply Tucson Code provisions, including the board of adjustment and board of appeals, which determine matters arising under the land use and zoning provisions of the city code, the civil service commission, which hears and decides all related personal matters in the Tucson Code, and the tax collector, who hears and determines all tax matters under the Tucson Code. This conten-

---

**2.** We do not believe that a correction or abatement made by a hearing officer is a penalty because such orders are not punishment but remedial and they are not within the exclusive jurisdiction of the city court.

tion is without merit. Application of the clear language of the provision would only mean that these administrative bodies could not institute actions to enforce a penalty, fine, or forfeiture for the violation of an ordinance or for the neglect to perform any duty required by an ordinance.

Appellants have requested attorney's fees on appeal pursuant to either A.R.S. § 12–2030 (mandamus actions) or *Arnold v. Arizona Department of Health Services,* 160 Ariz. 593, 775 P.2d 521 (1989) (private attorney general doctrine). The request is denied.

The judgment of the trial court is vacated and the matter is remanded for further proceedings consistent with this opinion.

LIVERMORE, C.J., and LACAGNINA, P.J., concur.