## UPELL *v.* BERGMAN.

1. Principal and Agent—Agent's Fraud.
    A principal may not profit by his agent's fraud.

2. Same—Brokers—Exchange of Property—Fraud.
    A principal who engaged a broker to act as his agent in an exchange of property is responsible for the agent's fraud, although not aware thereof at the time.

3. EXCHANGE OF PROPERTY—FRAUD—EVIDENCE—SUFFICIENCY.

In a suit to set aside an exchange of property on the ground of fraud, evidence as to misrepresentations by the broker representing defendants as to the value of the property conveyed by them, and also as to the condition of the title, *held,* sufficient to entitle plaintiffs to relief.

4. EQUITY—LACHES.

In a large measure the question as to whether relief should be withheld on the ground of laches must depend upon the facts and circumstances of the particular case.

5. SAME—MERE LAPSE OF TIME NOT SUFFICIENT.

Mere lapse of time does not necessarily constitute laches, but the right to urge laches as a defense is dependent upon some prejudice having resulted therefrom.

6. EXCHANGE OF PROPERTY—FRAUD—LACHES—TENDER.

The defense of laches may not be relied upon where plaintiffs, because of their confidence in defendants' agent, were slow to comprehend that they had been defrauded by him, and were lulled into inactivity by his promises after they discovered that the title was not as represented, and especially where they tendered reconveyance, and did everything in their power to put defendants *in statu quo.*

7. SAME—LACHES.

Where the fact that a mortgage on defendants' property had been foreclosed was fraudulently concealed from plaintiffs, and defendants' agent misrepresented to plaintiffs the status of the title, defendants may not urge, in support of their defense of laches, that the redemption period expired in about 18 days after the suit was started.

8. SAME—ALTERATION OF INSTRUMENTS—DEEDS—FORGERY.

Where, without the knowledge or consent of their grantor, defendants had their names as grantees in a deed erased and plaintiffs' names inserted instead, the deed, which they fraudulently induced plaintiffs to accept, was a forgery and was not a proper conveyance of title from defendants to plaintiffs.

9. APPEAL AND ERROR—COSTS—FRAUD—MODIFICATION OF DECREE.

Where the charge of fraud was not established as to two of the defendants, the decree of the court below is modified, on appeal, relieving said defendants from the payment of costs.

Appeal from Oakland; Sample (George W.), J., presiding.   Submitted January 23, 1929.   (Docket No. 28, Calendar No. 34,037.)   Decided March 28, 1929.

Bill by Peter Upell and another against William Bergman and others to set aside an exchange of real property on the ground of fraud.   From a decree for plaintiffs, defendants appeal.   Modified and affirmed.

*Schulte & Pare,* for plaintiffs.

*William B. Tyson* and *William H. Umlor,* for defendants.

North, C. J.   The defendants William Bergman and Emma Bergman, husband and wife, were the owners of the Park hotel in the village of Orion, Michigan.   They conveyed it to the defendant John Coromilas, and in part consideration received a deed of his equity in four houses and lots in the city of Detroit, which are referred to herein as the Doris avenue property.   Shortly after this transaction, and on to wit, September 15, 1925, Mr. and Mrs. Bergman traded the equity in this Doris avenue property as part payment of the contract price of the Arlington hotel, also located in the village of Orion, and then owned by the plaintiffs Mr. and Mrs. Upell. In this transaction the price of the Arlington hotel was fixed at $18,000 and the equity in the Doris avenue property at $10,500.   Nothing has been paid on the balance of the contract price.   Both exchanges of property were brought about through a real estate agency composed of defendants Taylor and Brillinger.   The defendant Townsend is charged in the amended bill of complaint with conspiring with other defendants in perpetrating the alleged fraud

hereinafter set forth. Mr. and Mrs. Robertson, also named as defendants, were formerly owners of the Doris avenue property. As to three of the lots constituting this property, the record title is defective in that the deeds to grantees subsequent to Mr. and Mrs. Robertson have not been recorded. To secure payment for materials furnished in improving these properties, Mr. and Mrs. Robertson conveyed these four lots to the Hartwick Lumber Company. The instruments thus given were in form warranty deeds but in fact were mortgages constituting a separate lien on each of the lots amounting to $1,527. A suit was instituted by the lumber company to foreclose these liens and a *lis pendens* was filed June 9, 1925; foreclosure was followed by sale on March 3, 1926. The commissioners' deeds were recorded March 19, 1926.

By this bill of complaint the plaintiffs seek rescission of the transaction between themselves and Mr. and Mrs. Bergman; and also to be reimbursed for $900 claimed to have been paid by the plaintiffs to Taylor and Brillinger as commission for services in consummating the deal. This relief is sought upon the following alleged fraudulent misrepresentations claimed to have been made to the plaintiffs by the defendant Brillinger: (1) that he (Brillinger) was well acquainted with the Doris avenue property, that it was worth more than was being asked for it, and that each of the four places was well worth $10,500; (2) that the cost of completing two of the places which were unfinished would be $450, when in fact the cost was very much more; (3) that the Hartwick Lumber Company "had a claim against each place in the sum of $1,529 for lumber  *  *  *  but that they had filed no lien or suit against the property," and were willing to wait for their money until the

plaintiff could refinance the property; (4) that plaintiffs supposed the real estate agency, composed of the defendants Taylor and Brillinger, was acting solely in behalf of the plaintiffs in consummating the transaction with Mr. and Mrs. Bergman, when in fact the men composing this agency were also acting for and in behalf of Mr. and Mrs. Bergman and conspired with the defendants Bergman, Coromilas and Townsend to induce the plaintiffs by misrepresentations to accept the Doris avenue property at a valuation greatly in excess of its actual worth; and (5) relief is also sought on the ground that no legal conveyance was made of their title to the Doris avenue property by the defendants Bergman to the plaintiffs, but instead the names of the plaintiffs were wrongfully substituted in the place of the names of Mr. and Mrs. Bergman as grantees in the deed given to them by the defendant Coromilas, and that this was done with the fraudulent intention of making it appear that Coromilas was plaintiffs' grantor.

As to the defendants Coromilas and Townsend, a cause of action in behalf of the plaintiffs is not alleged in the bill of complaint except as they are rather indefinitely included in the conspiracy charged. This charge is not established by the proofs. The transaction with which Coromilas and Townsend were concerned was completely closed with Mr. and Mrs. Bergman before the trade was consummated out of which this suit arises, and which was a matter in which neither Coromilas or Townsend had any interest so far as appears from the testimony.

Neither does the record contain any proof which justifies making the Hartwick Lumber Company a party defendant. No complaint is made as to the validity of their claim or the regularity of the pro-

ceedings by which it was foreclosed. The bill contains no prayer for relief against the Hartwick Lumber Company or the defendants Mr. and Mrs. Robertson. No relief was granted in the lower court against any of these defendants, the appeal as perfected does not involve their rights, and hence we are not concerned with them in this review.

In disposing of the case, we are concerned only in ascertaining what relief, if any, the plaintiffs are entitled to have against the defendants Mr. and Mrs. Bergman, Dur Taylor, and Clark W. Brillinger, or either of them, and this on the ground of fraud and deceit alleged in the bill of complaint. Brillinger, as a member of the firm of Taylor and Brillinger, was acting as the agent of the plaintiffs, and also of Mr. and Mrs. Bergman in this exchange of property. If Brillinger perpetrated a fraud on the plaintiffs in the manner alleged in their bill of complaint, the Bergmans, as principals, must be held responsible for the act of their agent even though they were not aware of his fraudulent conduct. They cannot profit by his fraud. *Chaffee* v. *Raymond,* 241 Mich. 395.

We have given the record careful consideration, and are of the opinion that there was fraud and misrepresentation which justified the trial judge in granting relief to the plaintiffs. They were inexperienced in matters of the character here involved, they relied upon the judgment of Brillinger, and, knowing of this, he deliberately deceived them by the misrepresentation that each of the four places constituting the Doris avenue property was worth $10,500. Before the transaction was closed the plaintiffs went to Detroit and looked at the property for which they were about to trade; but notwithstanding this we think the record shows they relied

upon and acted upon Brillinger's statement as to value. Mr. Upell testified:

"We went with Mr. Brillinger to see this Detroit property. I told Mr. Brillinger I knew nothing of real estate values in Detroit at the time. He told me they were four wonderful places and we ought to do well with them. Mr. Brillinger said he knew the places were well worth $10,500 for each place."

Brillinger also deceived them as to the condition of the title to this property. Notwithstanding his testimony to the contrary, it is incredible that Brillinger had consummated the trade between Mr. and Mrs. Bergman and John Coromilas without learning that the Hartwick Lumber Company had a mortgage in the form of a warranty deed against each of the four places on Doris avenue, and that a decree of foreclosure had been taken. The defendant Townsend testified he showed Taylor, Brillinger, and Bergman, the abstracts of title to these properties the day the deal was closed with Coromilas. These mortgages were all of record at that time and a *lis pendens* had been filed incident to their foreclosure. It was a fraud on the part of Brillinger to lead the plaintiffs to believe that these claims were only ordinary claims for lumber and building materials. While this part of plaintiffs' claim is denied by Brillinger, the circuit judge evidently accepted the testimony of the plaintiffs. The cross-examination of Mr. Upell contains the following:

"*Q.* What were some of the false and fraudulent statements that were made by Mr. Brillinger, Mr. Upell?

"*A.* Well, in the first place in regard to the mortgage of the lumber company. He said everything was all right at that time, the record was all clear and everything was fine."

These and other matters appearing of record satisfy us that the fraud alleged was committed.

The defendants contend the plaintiffs should not be granted equitable relief because of laches. In a large measure the question as to whether relief should be withheld on the ground of laches must depend upon the facts and circumstances of the particular case. It has often been held that mere lapse of time does not necessarily constitute laches; and that the right to urge laches as a defense is dependent upon some prejudice having resulted therefrom. In the instant case the plaintiffs were not only deceived and defrauded in the first instance, but because of their misplaced confidence in Brillinger, they were slow to comprehend the wrong done; and even after the foreclosure of the Hartwick Lumber Company was called to plaintiffs' attention by the letter written for that company on January 27, 1926, they were still lulled into inactivity by Brillinger's letter written February 1, 1926, in which he assured them that he would do all he could to help them dispose of the Doris avenue-property and that as spring was coming on ''things ought to start to move better.'' The tender of a quitclaim deed as a reconveyance of the Detroit property was made by the plaintiffs to Mr. and Mrs. Bergman August 4, 1926. Thereby the plaintiffs did everything in their power to put Mr. and Mrs. Bergman *in statu quo.* The bill of complaint was filed August 14, 1926, and these defendants appeared August 21st. It is urged by defendants that the period of redemption from the Hartwick Lumber Company foreclosure expired about 18 days after suit was started. But it should be borne in mind that this mortgage had been foreclosed before the exchange of properties was consummated and that the agent of the Bergmans mis-

represented to the plaintiffs the status of the title. The plaintiffs had tendered a reconveyance in the meantime. And further, as is set forth in the bill of complaint, Mr. and Mrs. Bergman never in fact conveyed their title to the Doris avenue property to the plaintiffs, but instead through Brillinger and Bergman fraudulently induced the plaintiffs to accept the deed which John Coromilas had executed and delivered to Mr. and Mrs. Bergman, this being accomplished by altering the deed and substituting the plaintiffs as grantees in the place of the Bergmans without the knowledge and consent of Coromilas. Clearly this mutilated deed as delivered to the plaintiffs was a forgery and was not a proper conveyance of title to the Doris avenue property. This was not discovered and understood by the plaintiffs until some time in April, 1926. Added to this is the fact that the record fairly indicates that the Doris avenue property which was subject to two prior mortgages in addition to the Hartwick Lumber Company claim, was incumbered for practically all it was worth at the time of the transaction between these parties, and hence if the Bergmans otherwise had a right to complain of laches, it may be said that loss of an opportunity to redeem did not result in serious damage to them.

The decree as entered in the circuit against Mr. and Mrs. Bergman and against Taylor and Brillinger is affirmed, with costs of this court to the appellees. But in so far as the decree in the lower court required payment of costs by the defendants Coromilas and Townsend, it will be vacated, but without costs on this appeal.

FEAD, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.