### LENZ v. MAYOR OF DETROIT.

1. MUNICIPAL CORPORATIONS—VETERANS' PREFERENCE ACT—LACHES—CERTIORARI.

Plaintiff, a veteran who had been discharged from public employment with city but who waited a year before instituting court proceedings to compel reinstatement, which proceedings consumed about 3 years, and were followed by a delay of at least 7 months before seeking review by the proper remedy of certiorari, held, guilty of laches, especially where, during the interim, the city has eliminated the position formerly held by plaintiff and distributed the work among other employees already in employ of the city (CL 1948, § 35.402 et seq.).

2. CERTIORARI—LACHES—STATUTE OF LIMITATIONS—SUSPENSION.

The provision in the statute of limitations, suspending its oper-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Veterans and Veterans' Act §§ 11–13.
[1] Power to abolish or discontinue office. 4 ALR 205, 37 ALR 815, 172 ALR 1366.
[1] Constitutionality of State veterans' public employment preference law. 161 ALR 494.
[2] 19 Am Jur, Equity § 496.
[2, 3] 19 Am Jur, Equity § 501.
[4] See, generally, 14 Am Jur, Costs § 91.

ation until a year after the conclusion of certain legal proceedings, under certain circumstances, is not controlling of the question of laches in the use of the discretionary remedy of certiorari (CL 1948, § 609.19).

3. SAME—TIME—DISCRETION OF COURT.

Statutory provision requiring the writ of certiorari to be issued within a given time does not take away the discretionary power of the court to quash for laches in not suing out the writ sooner (CL 1948, § 609.19).

4. COURTS—DETERMINATION AS TO LACHES—MANDAMUS—CERTIORARI.

A decision that mandamus was not the proper remedy in earlier review of plaintiff's proceeding against defendant did not constitute a conclusive determination on the question of laches, where trial court had decided no laches existed and the Supreme Court did not disturb such finding.

5. COSTS—PUBLIC QUESTION—VETERANS' PREFERENCE.

No costs are allowed in veteran's proceeding by certiorari to review action of mayor of city in approving his dismissal, notwithstanding the veterans' preference act, a public question being involved (CL 1948, § 35.402 et seq.).

SMITH and SHARPE, JJ., dissenting.

Appeal from Wayne; Weideman (Carl M.), J. Submitted June 9, 1955. (Docket No. 39, Calendar No. 46,536.) Decided December 1, 1955. Rehearing denied March 1, 1956. Certiorari denied by the Supreme Court of the United States June 11, 1956.

Certiorari by John N. Lenz against Albert E. Cobo, Mayor of the City of Detroit, to review proceedings resulting in plaintiff's discharge. Judgment for plaintiff. Defendant appeals. Reversed.

*Craig Thompson*, for plaintiff.

*Paul T. Dwyer*, Corporation Counsel, and *Helen Miller Smith*, Assistant Corporation Counsel, for defendant.

*Chase E. Lowe*, for Local 836, American Federation of State, County and Municipal Employees, and Veterans, on petition to intervene in rehearing.

DETHMERS, J.   The facts are largely set forth in *Lenz* v. *Mayor of Detroit,* 338 Mich 383, in which we dismissed mandamus commenced in the circuit court on the ground that certiorari was the sole remedy available to review the action of the mayor approving and ordering plaintiff's discharge as a city employee after hearing before the mayor under the veterans' preference act.   CL 1948, § 35.402 *et seq.* (Stat Ann 1952 Rev § 4.1222 *et seq.*).

The mayor's order of discharge issued February 6, 1950, and plaintiff delayed instituting the mandamus proceedings until February 5, 1951.   Our decision in that case was announced December 29, 1953, and rehearing denied February 18, 1954.   Plaintiff again delayed until September 24, 1954, before filing in the circuit court his petition for certiorari in this cause. The original notice to plaintiff of his discharge was dated November 14, 1949.   The records in the mandamus case and at bar disclose that on November 9, 1949, the common council unanimously voted to abolish the 2 positions of legislative clerk, of which plaintiff held one, and on November 15, 1949, adopted a formal resolution abolishing them, the work thereof being thereby directed to be divided among and assigned to various other employees already in the employ of the city.   On September 18, 1950, the civil service commission discontinued the classification of legislative clerk in city employment and it has not since been recreated.

Plaintiff seeks reinstatement to an abolished position, with resultant disruption of the existing system under which the duties of the abolished positions have been distributed and otherwise integrated therein, and giving rise to a serious question of rights to pension and unearned back pay for a 6-year period.   In both the mandamus and certiorari cases defendant affirmatively raised the defense of laches, supported by testimony in the mandamus case and

in this case by an affidavit attached to the motion to quash the writ of certiorari, showing such facts, which indicate that reversal of the proceedings discharging plaintiff would result in prejudice, detriment and inconvenience to the public service. Under such circumstances we believe that plaintiff's delay of 1 year after the mayor's order of discharge before commencing the mandamus proceedings, with subsequent delay of almost 3 years occasioned by that ill-starred selection of remedy, and his further delay of 9, or at the least 7, months after decision by this Court in the mandamus case before commencement of this action, render him guilty of laches. *Jones* v. *Doonan,* 265 Mich 384; *McGregor* v. *Carney,* 271 Mich 278. Plaintiff cites *Chamski* v. *Wayne County Board of Auditors,* 288 Mich 238, to the contrary. The holding in that case was that plaintiff there could not be held guilty of laches because it is an affirmative defense and no testimony had been offered on the question. The case is, in that respect, distinguishable from that at bar.

While CL 1948, § 609.19 (Stat Ann § 27.611), cited by plaintiff, serves to suspend the bar of the statute of limitations under certain circumstances (*McOmber* v. *Chapman,* 42 Mich 117), the statute is not controlling of the question of laches. See *In the Matter of Lantis,* 9 Mich 324 (80 Am Dec 85), in which we held that the writ of certiorari at common law is not one of right, but rests in the sound discretion of the court, to be allowed or not as may best promote the ends of justice, and that a statutory provision requiring the writ of certiorari to be issued within 2 years did not take away the discretionary power of the court to quash for laches in not suing out the writ sooner.

Plaintiff stresses that the trial court decided in the mandamus proceeding that no laches existed and that this Court, on appeal therefrom, did not disturb that

finding. Defendant did urge laches on appeal but there was no occasion to pass on it inasmuch as we held mandamus not the proper remedy. Decision in that case was, therefore, not conclusive of the question of laches.

Judgment of the court below setting aside the mayor's order of dismissal is reversed and the writ quashed, without costs, a public question being involved.

CARR, C. J., and BUTZEL, BOYLES, REID, and KELLY, JJ., concurred with DETHMERS, J.

SMITH, J. (*dissenting*). This case having been heretofore before this Court (*Lenz* v. *Mayor of Detroit,* 338 Mich 383) and the facts having therein been stated in detail, we will not burden the record with additional recitation, save to the extent necessary for the purpose of our holding herein.

At the heart of the case is a question of statutory compliance and due process. The statute involved is PA 1897, No 205, as amended (CL 1948, § 35.401 *et seq.* [Stat Ann 1952 Rev § 4.1221 *et seq.*]). This act, widely known as the veterans' preference act, finds its counterpart in many States of the Union. The purpose of the act is to protect the welfare of veterans by imposing safeguards with respect to their employment and discharge. On the merits, we are here primarily concerned only with one, the requirement that the veteran have a "full hearing" on charges preferred against him as a condition precedent to his valid discharge. (CL 1948, § 35.402 [Stat Ann 1952 Rev § 4.1222].)

The complexities of modern society are such that it is no longer possible that our traditional courts of law pass upon all questions, even all those judicial in nature, which confront our citizens. The power to hear, and to decide, has for some purpose been placed

in administrative tribunals, and officials. It is before them that the citizen has his hearing, or the "full hearing" sometimes prescribed by statute. We need not compile a catalogue of the essential elements of a full hearing. The literature is voluminous. See Cooper, Administrative Agencies and the Courts, p 149 *et seq.* In essence, the citizen must be told with clarity and in detail just how he has offended, and then given his day in court in defense of his actions, whether that "court" be an administrative body or official acting quasi-judicially, or the traditional judicial tribunal. The Supreme Court of the United States, in *Morgan* v. *United States,* 304 US 1, 19 (58 S Ct 773, 82 L ed 1129), well stated the requirement:

"Congress, in requiring a 'full hearing,' had regard to judicial standards,—not in any technical sense but with respect to those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature."

The citizen, to put it even more simply, "shall be protected by the rudimentary requirements of fair play." *Id.* 14, 15. His right to a hearing "embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Id.* 18.

It is never to be forgotten that when the administrative official acts in a quasi-judicial capacity, when he moves from the swivel chair to the woolsack, he becomes, for a brief moment, the guardian of the Grail. In his custody and subject to his exercise are the great liberties and inviolable rights of each of our people. The citizen before him, awaiting his judgment, is no longer an associate or subordinate, merely. He is the accused. He stands attended by the Bill of Rights, without cast or color of obliquity, entitled to respect, to patience, and to ample opportunity to answer in detail the charges with which he

is confronted. He is to be neither harried nor hurried.

Tested by these standards, appellee's hearing before the mayor of Detroit was fatally defective, (1) because of the mode of presentation of charges, which were made to some degree specific, in response to his demand, only 10 days before the hearing, and (2) because of the conduct of the hearing itself. After the charges were read, a witness offered testimony, adverse to appellee, and was questioned in some detail in attempted corroboration of the charges made. Appellee himself was then questioned briefly, following which the mayor brought the hearing to an abrupt close in the following manner:

"*Mr. Cobo*: For the purpose of intimidation?

"*Mr. Lenz*: It wasn't for that purpose.

"*Mr. Cobo*: Well now, give me some better logic or I will have to call this matter off.

"*Mr. Ide*: You have your file here (to Mr. Lenz).

"*Mr. Lenz*: (sorting through papers and repeating statements made above).

"*Mr. Cobo*: You are just going around and around and that is not an answer. Your own testimony convicts you. Sorry, that is the end of the hearing."

The hearing was thereupon concluded. Thus the only testimony offered in Lenz's behalf at the mayor's hearing was that contained in his own answers to the few questions asked of him with respect to certain of the charges made. The record is barren of any adequate opportunity extended him to cross-examine, to make a formal defense, to document his denials with letters and exhibits, or to introduce witnesses in his own behalf. The defects are the more glaring because it is clear from the record of the original mandamus proceedings (utilized in the instant case by both parties) that Lenz had documentary evidence, as well as verbal testimony which

he desired to submit in his behalf. He was thereafter found "guilty as charged" and the order given was that he "be discharged as a city employee."

This truncated interview was no hearing, as that term is employed in the statute. It violated the rudimentary requirements of fair play. It did not accord Lenz due process of law. Appellant's brief minimizes the effect of testimony sought to be introduced by Lenz, utilizing for such purpose the records of the previous mandamus action. "We want," states appellant's brief, "no mistaken impression left with this Court that there was significant or controlling testimony excluded by the conduct of the defendant," referring, apparently, to the abrupt termination of the proceedings. Whether Lenz's testimony would have been significant or controlling was a matter for the oath and conscience of the hearing officer, not the determination of Lenz's adversary. But whether or not it would, in fact, "be of sufficient probative force to influence the findings" (again using appellant's language) Lenz was entitled to introduce it and to argue its probative force to the hearing officer and upon possible appeal. We do not indulge the presumption that proffered testimony in defense will be fruitless. We cannot condone the exclusion of defenses on the ground that they aren't very strong defenses.

It is not necessary to decision in this case that we trace in detail the paths trod by the litigants in their efforts to reach final adjudication. Plaintiff's first effort was in mandamus. As to that, we ruled (*Lenz v. Mayor of Detroit, supra*) that he had mistaken his remedy. He started over, this time in certiorari, and again he comes before this Court as the appellee. (Those interested in exploring this procedural problem may profit by a comment in 27 Iowa LR 291, in which the author describes the "similarities and partial overlapping" of certiorari

and mandamus, comments upon the hardships to litigants who select the wrong proceeding, and notes the method of avoidance, under both New York and the Federal rules, of the "procedural pitfalls" presented.)

Before us, then, on appeal from certiorari, my Brother would reverse the judgment below and quash the writ because of laches arising from the appellee's delay in filing his original mandamus action, and also in starting over again in certiorari.

I cannot agree. The doctrine of laches is an equitable concept of flexible import, not governed by rigid rules. Controlling in the concept is the idea of inaction, of sleeping on one's rights, of negligence, which, with the passage of time and change of conditions, render the assertion of the right inequitable. *Humiston, Keeling & Co.* v. *Yore,* 181 Mich 629. Primarily, and in the context before us, it is a question of fact. *Oliver* v. *Poulos,* 312 Mass 188 (44 NE 2d 1, 142 ALR 1094) ; *Shanik* v. *White Sewing Machine Corporation,* 25 Del Ch 371 (19 A2d 831). See, also, *Upell* v. *Bergman,* 246 Mich 82, and *Hope* v. *Detroit Trust Co.,* 275 Mich 213. In its determination all the above-described diverse elements are weighed, the prejudice to the defendant against the explanations of the plaintiff. The resolution is one peculiarly appropriate to the trial court. In such court plaintiff testified of his efforts to obtain legal counsel. There was a reluctance to sue the City Hall. As one of the attorneys approached put it, "You need a slam-bang of a lawyer." He, it is noted in the record, was "getting old," and he obviously spoke with the fatigue of the years. Eventually counsel was obtained and the suit started. The picture here presented is not one of rest, sleep, and quiet on the part of one who, with full knowledge of his legal rights, prefers inactivity to assertion. Rather it is one of consultation, of inquiry, and of pleas for

legal aid. They were fruitless for a time, it is true, but nevertheless it is action, not repose. We find nothing affirmative in the record to sustain defendant's defense of laches except the mere passage of time, which does not merit our comment, and the asserted change of conditions due to the council's abolition of plaintiff's position, that of legislative clerk, the day after his discharge. The record is clear, however, that such abolition did not take the other legislative clerk (there were 2 such, Lenz and Hardy) off the city pay roll, he having been transferred to other work at the same pay, and a similar solution, the record indicates, was at one time contemplated with respect to plaintiff but rejected because of actions taken by him.

This, then, is defendant's defense of laches, unreasonable delay before starting the original mandamus action. It has been twice rejected by the trial court. We find no error of law in such rejection.

Moreover, my conscience troubles me about its application as a ground for decision in this Court. In the original mandamus action the question of laches was argued, was decided by the trial court, was claimed as a reason and ground for appeal, and was briefed to the court. We held, in substance, that Lenz had mistaken his remedy, that "the sole remedy available" to him was certiorari. Appellee argues that implicit in such holding, or necessarily included therein because of our failure to disturb the trial court's holding of no laches, is our holding that his remedy was not lost by laches. This we reject. We did not pass on the question of laches. But the application of the doctrine of laches to the case at bar cannot be settled by any mechanical rule as to whether or not one ground of decision necessarily includes or rejects others. The question involves the application of an equitable doctrine controlled by equitable considerations, a formula whereby the con-

science of the court finds expression. As to this we are clear: We do not regard it as consonant with our practice that in a litigant's second appearance in this Court in the same case he be struck down in part because of a nonjurisdictional defect existing, if at all, before we heard him the first time and concerning which, though then briefed to us, we refrained from comment, particularly in view of the fact that our ruling then on such ground would have finally disposed of his action and would have saved him his long and expensive second journey into this Court.

As to alleged delay in starting over again in certiorari, appellee argues on the record before us that under CL 1948, § 609.19 (Stat Ann § 27.611), he had a year within which to file the proper action. My Brother concludes that counsel was in error, that the statute does not apply. But, on the question of laches, it is immaterial whether counsel was right or wrong, so long as he was acting in good faith, and the contrary is nowhere intimated in this record. Even if counsel were wrong, appellee was relying on his advice. This is not sleeping on his rights, not negligence in the prosecution of his claim, and is not passive inaction. It is our opinion that delay under advice of counsel cannot constitute laches unless so gross as to raise the question of bad faith. *Sioux Falls Savings Bank* v. *Lien,* 14 SD 410 (85 NW 924); *Weidenfeld* v. *Pacific Improvement Co.,* 267 F 699.

The short of it is that I cannot say to this veteran, within a few years of his pension, to get thee hence. His opponent has invoked the aid of a handmaiden of equity, the doctrine of laches. Upon such invocation, the defense of delay will be weighed by the courts in the scales of conscience. The trial court, upon the question of fact (laches) squarely presented to it,

has held for the plaintiff. What we ourselves see is insistent assertion of rights, not sloth, not inaction. Moreover, we are committed to the well-established and salutary rule that in our review of certiorari we pass neither on the weight of the evidence nor on the credibility of the witness. There being no total lack of evidence to support the finding of the trial court, we will not disturb it on certiorari or on review thereof. *Gaines* v. *Betts,* 2 Doug (Mich) 98; *Randolph* v. *City of Dearborn,* 298 Mich 224; *Great Lakes Greyhound Lines* v. *International Union, UAW-CIO,* 341 Mich 290. There is no error of law in this case.

Judgment should be affirmed. Costs to appellee.

SHARPE, J., concurred in affirmance.