LENZ v. CITY OF DETROIT.

MUNICIPAL CORPORATIONS—PRESENTATION OF CLAIMS—WAR VETERAN'S SALARY.

War veteran's claim for salary alleged to be due from defendant city was barred by reason of noncompliance with charter provision requiring that unliquidated claim be presented to common council as a condition precedent to bringing an action thereon (Detroit Charter, title 6, chap 7, § 11).

SMITH and SOURIS, JJ., dissenting.

Appeal from Wayne; Sullivan (Joseph A.), J. Submitted April 6, 1960. (Docket No. 15, Calender No. 47,944.) Decided September 16, 1960. Rehearing denied October 10, 1960.

Assumpsit by John N. Lenz against the City of Detroit, a municipal corporation, its mayor, and certain of its officials for salary and pension benefits of which he was deprived by reason of alleged wrongful discharge from civic employment. Judgment for defendants. Plaintiff appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur, Municipal Corporations § 677.

*Craig Thompson,* for plaintiff.

*Nathaniel H. Goldstick,* Corporation Counsel, *Helen Miller Smith* and *John R. McKinlay,* Assistants Corporation Counsel, for defendants.

KELLY, J.   November 2, 1956, plaintiff filed his declaration alleging:

(1) That he was notified by letter on November 14, 1949, that he was discharged from his position of legislative clerk in the department of city clerk of Detroit for the following reasons: "Insubordination, conduct unbecoming a city employee, threatened intimidation of employer, misuse of council office, and fraudulent use of council stationery."

(2) That he appealed and protested, in due course, to the civil service commission and was duly heard at a scheduled hearing before said commission, after which said commission made a finding that said discharge was not for political reasons and was "not for reasons other than the good of the service."

(3) That following the finding of the civil service commission, plaintiff filed a written protest with the mayor of the city of Detroit on December 14, 1949.

(4) That he (plaintiff) was notified by the mayor on February 6, 1950, as follows:

"After full and due consideration of all the facts submitted at the hearing granted you before me on January 27, 1950, in accordance with the provisions of the veterans preference act, you are hereby advised of my decision.

"I find as a matter of fact that you did, while an employee of the city clerk, take militant action without regard to the recommendation of your employer, to change your classification and secure an increase in your salary. That you did, while so employed, collect facts in regard to the administration of the city clerk's office, and did attempt to use such facts

to embarrass and discredit your employer. That you did use official stationery of the common council and assume the title of 'secretary of the common council' for your personal benefit and prestige.

"It is my decision that you are guilty as charged and it is, therefore, my order that you be discharged as a city employee in accordance with the recommendations of the city clerk and the civil service commission."

(5) That plaintiff's mandamus action against the mayor to effect plaintiff's reinstatement as an employee was granted January 28, 1953, but the circuit court's decision was reversed by this Court on December 29, 1953 (*Lenz* v. *Mayor of Detroit,* 338 Mich 383), this Court ruling mandamus was not the proper remedy.

(6) That on February 10, 1955, the Wayne circuit court sustained plaintiff's writ of certiorari thereby quashing the proceedings before the mayor and setting aside the order of discharge, and on December 1, 1955, this Court reversed the circuit court (*Lenz* v. *Mayor of Detroit,* 343 Mich 599).

Plaintiff concludes his declaration (paragraphs 22, 23 and 24) as follows:

"It was above and beyond the official power, authority, and jurisdiction of defendant Albert E. Cobo to hold the required statutory hearing on the protest of plaintiff, in the manner in which he did proceed, as hereinbefore recited; same being unfair, biased, prejudiced, and wholly denying to plaintiff his undoubted right to due process of law.

"It was above and beyond the scope of authority, power, and jurisdiction of defendant city of Detroit to deny, through its agency the civil service commission, plaintiff's protest against and appeal from the void order made by Ernest Jones, deputy city clerk, as hereinbefore recited.

"As a direct and proximate result of the void acts of said defendants, made without jurisdiction to make them, as hereinbefore recited, plaintiff was arbitrarily, forcefully, and without due process deprived of valuable contractual and property rights, and suffered other financial losses, and was thus damaged in the sum of $68,200.17."

In finding no cause for action on the part of plaintiff, the court stated, in part, in its opinion:

"Finally, on November 2, 1956, plaintiff started suit in assumpsit in this court to recover damages for alleged breach of contract between himself and the city. This was just 9 days short of 7 years from the date of discharge, and 6 years, 8 months and 27 days after the mayor's decision. * * *

"Testimony was offered by the plaintiff and plaintiff's witness, in addition to a 'stipulation of facts' which attempted to incorporate everything that had transpired in the past in the plaintiff's efforts at reinstatement—'providing it was admissible.'

"Notwithstanding plaintiff's claim that he was not afforded a full and fair hearing (and, implicitly, that he was not guilty of the charges laid against him), he offered no testimony to refute the charges against him, but confined his testimony to his concept of damages as a result of the alleged breach of contract. The testimony on this point was quite disjointed, and appeared to establish that plaintiff prospered to a greater degree after he left the employment of the city than he had with the city."

Defendants contend that plaintiff is barred by his failure to file a claim with the common council of Detroit.

Title 6, chap 7, § 11, of the Detroit city charter, reads:

"The common council shall audit and allow all accounts chargeable against the city, but no unliquidated account, or claim, or contract shall be re-

ceived for audit or allowance unless it be accompanied by an affidavit of the person rendering it, to the effect that he verily believes that the services or property therein charged have been actually performed or delivered to the city, and the sums charged therefor are reasonable and just, and that, to the best of his knowledge and belief, no set-off exists, nor payment has been made on account thereof, except as are included or referred to in such account or claim. It shall be a sufficient bar and answer to any action or proceeding in any court for the collection of any demand or claim against said city that it has never been presented to the common council for audit or allowance or if on contracts that it was presented without said affidavit and rejected for that reason or that the action or proceeding was brought before the common council had a reasonable time to investigate and pass upon it."[*]

A previous decision by this Court in regard to the necessity of a war veteran complying with this provision of the Detroit city charter is disclosed by *Burkheiser* v. *City of Detroit,* 270 Mich 381, wherein we held:

"Charter provision requiring that unliquidated claim be verified when presented to common council and that court action on any claim may be barred by claimant's failure to present claim to council *held,* applicable to war veteran's claim for wages as inspector of sewer construction during period he was laid off (Detroit charter, title 6, chap 7, § 11)." (Syllabus 3.)

That proof of claim is a condition precedent to recovery is also established by *Springer* v. *City of Detroit,* 102 Mich 300; *Moulthrop* v. *City of Detroit,*

---

[*] Municipal Code, City of Detroit, charter section, p 206.—RE-PORTER.

218 Mich 464; and *Grand Trunk W. R. Co.* v. *Detroit,* 342 Mich 537.

We see no merit to plaintiff's contention that he did not have to comply with the charter provisions because "at the time of filing this suit appellant did not have any claim to present to the council, and still has no claim to present. Appellant will never have a claim to present to common council on the facts of this case, unless and until it be determined by this Court that his discharge was illegal and void."

Appellant's action was barred by his failure to file a claim with the common council.

Defendants also contend that plaintiff-appellant does not have a cause of action. In endeavoring to meet the statute of limitations argument, plaintiff, in his brief, states:

"It was only on the date when this Court handed down its decision in 343 Michigan 599; that is to say, on December 1, 1955, that appellant's status was cleared to the point where he could no longer ask for or receive a valid hearing before the mayor of Detroit."

Having failed to establish the illegality of the mayor's decision of discharge, plaintiff, 6 years and 8 months after said hearing, commenced this action in assumpsit charging that because of the void acts of defendants, plaintiff is entitled to $68,200.17.

To grant plaintiff's request in this assumpsit action would result in final determination that even though the court has refused to uphold plaintiff's contention that the discharge was illegal and void, plaintiff is entitled to damages in an assumpsit action based upon a declaration that the hearing before the mayor was "unfair, biased, prejudiced, and wholly denying to plaintiff his undoubted right to due process of law" and that "plaintiff was arbi-

trarily, forcefully, and without due process deprived of valuable contractual and property rights."

The case of *Sewell* v. *Detroit Electrical Contractors Assn.,* 345 Mich 93, dealt with a discharged employee of the city of Detroit who sued his department head and another superior in the department, claiming damages for a wrongful discharge. The suit was dismissed upon motion because of former adjudication by the civil service commission which upheld the validity of the discharge. The Supreme Court, in the appeal of the damage suit, held that the finding of the administrative tribunal was final and could not be attacked in a collateral proceeding such as a suit for damages, and, in deciding the case, stated (p 115):

"It is urged by defendants Steiner and Wolff that the dismissal of plaintiff's second application for leave to appeal in the nature of certiorari by Judge O'Hara on July 17, 1953, by reason of plaintiff's failure to furnish the trial court the transcript of the rehearing held by the civil service commission, left the decisions of the civil service commission on the hearing and rehearing and the judge's opinion and order of denial in full force and effect.

"In *Hailey* v. *Saginaw Justice of the Peace,* 320 Mich 59, 63, we said:

" 'The effect of a dismissal of an appeal is stated in 4 CJS, Appeal and Error, § 1386, pp 2007, 2008:*

" ' "On the dismissal of an appeal   *   *   *   the cause stands in the trial court as if no appeal had ever been taken;   *   *   *   the decree or order appealed from becomes final, *and the effect of such dismissal is to leave the parties where they were before the appellate proceeding was instituted."* ' (Emphasis supplied.)

"We think the above rule should apply with equal force to quasi-judicial bodies such as the civil service

---

* Currently, 5 CJS, Appeal and Error, § 1386, pp 507–509.—RE-PORTER.

commission of Detroit. In our opinion the action taken by the civil service commission on plaintiff's subsequent attempt to appeal is an adjudication that plaintiff was lawfully discharged from employment with the city of Detroit, and it also follows that any claim for damages against defendants Steiner and Wolff, growing out of such discharge, is foreclosed by reason of such discharge."

See, also, *Van Sant* v. *Atlantic City,* 68 NJL 449 (53 A 701); 37 Am Jur, Municipal Corporations, § 264, p 886; and McQuillin on Municipal Corporations, § 12.227.

We conclude that defendants' contention that plaintiff did not have a cause of action should be upheld.

Because of what has been said hereinbefore it is not necessary to pass upon the question of statute of limitations.

Affirmed. No costs, a public question being involved.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.

SMITH, J. (*dissenting*). Apparently John N. Lenz just cannot get the notion out of his head that somehow, sometime, our Court will dispose of his case on the merits.

Many years ago the mayor of Detroit, charged by law with the duty of affording Lenz a full hearing as to his discharge, became impatient with him, walked out of the hearing before Lenz' testimony was all in, and then ruled against him.

Lenz thought this was unfair and went into the circuit court in mandamus. His theory was that the mayor had a clear legal duty to give him a fair hearing before firing him, and, not having done so, the mayor should be ordered to restore him to duty.

Certiorari, he argued, would lie to bring up errors of law if a hearing were fairly conducted, but this, he claimed, was no hearing at all, but, rather, a kangaroo court. At any rate, in the circuit court he won and it was ordered that the mayor forthwith restore plaintiff to employment. We, however, reversed on the ground that mandamus was not the proper remedy.[1] Before us the city argued strenuously that Lenz was guilty of laches but we found it unnecessary to pass on the question. Nor did we pass on the merits. The decision was solely on procedural grounds, resting entirely on the murky distinction, easy to state and hard to apply, between certiorari and mandamus. *Lenz v. Mayor of Detroit*, 338 Mich 383.

Lenz then started all over again, this time in certiorari. Again he won in the circuit, and again the city appealed. This time a majority of our court found the city's charge of laches, which we had ignored in the former case, decisive. *Lenz v. Mayor of Detroit*, 343 Mich 599.

It was said that his position had been abolished, though the dissent pointed out that the so-called abolition

"did not take the other legislative clerk (there were 2 such, Lenz and Hardy) off the city payroll, he having been transferred to other work at the same pay, and a similar solution, the record indicates, was at one time contemplated with respect to plaintiff but rejected because of actions taken by him."

It may be gathered, I assume, that I am not impressed with the legality of the device of abolishing an alleged troublemaker's job as a handy means of

---

[1] *Cf. DeGuzman v. Wayne Circuit Judge*, 225 Mich 606, 610, where we considered the questions brought to us in mandamus "as though presented by certiorari." See Note, 27 Iowa L Rev 291, pointing out the overlapping in part of mandamus and certiorari, and steps taken in New York, and under the Federal rules, to avoid the "procedural pitfalls" occasioned thereby.

getting rid of him, particularly where he is protected by the veterans' preference act.[2]  Since any text will furnish the authorities, I forego the citations.

It will be noted that neither decision went to the merits.  The most that could be said for the last one was that we reached back on the shelf for the sword of laches tendered us for use against Lenz in the first case, dusted it off, and ran him through with it.[3]

But Lenz dies hard.  He has read somewhere of something called "a day in court" and he doggedly pursues it.  When our majority decided in the second *Lenz Case* that he came to law too late to get his job back he had to, perforce, accept the decision.  But we did not decide whether his discharge had been

---

[2] CL 1948, § 35.401 *et seq.* (Stat Ann 1952 Rev § 4.1221 *et seq.*).

[3] The following comments on the defense of laches are taken from the dissenting opinion in *Lenz* v. *Mayor of Detroit*, 343 Mich 599, 608, 609.

"This, then, is defendant's defense of laches, unreasonable delay before starting the original mandamus action.  It has been twice rejected by the trial court.  We find no error of law in such rejection.

"Moreover, my conscience troubles me about its application as a ground for decision in this Court.  In the original mandamus action the question of laches was argued, was decided by the trial court, was claimed as a reason and ground for appeal, and was briefed to the court.  We held, in substance, that Lenz had mistaken his remedy, that 'the sole remedy available' to him was certiorari.  Appellee argues that implicit in such holding, or necessarily included therein because of our failure to disturb the trial court's holding of no laches, is our holding that his remedy was not lost by laches.  This we reject.  We did not pass on the question of laches.  But the application of the doctrine of laches to the case at bar cannot be settled by any mechanical rule as to whether or not one ground of decision necessarily includes or rejects others.  The question involves the application of an equitable doctrine controlled by equitable considerations, a formula whereby the conscience of the court finds expression.  As to this we are clear: We do not regard it as consonant with our practice that in a litigant's second appearance in this Court in the same case he be struck down in part because of a nonjurisdictional defect existing, if at all, before we heard him the first time and concerning which, though then briefed to us, we refrained from comment, particularly in view of the fact that our ruling then on such ground would have finally disposed of his action and would have saved him his long and expensive second journey into this Court."

wrongful or rightful. He insists it was wrongful and arbitrary and he conceives that he has a right to damages arising therefrom, whether he ever gets his job back or not.

Consequently this suit, in assumpsit. He says he was wrongfully fired and he wants his damages, which include loss of salary, pension rights (he was within a few years of it), and other claims we need not recount. The facts were all stipulated.

But at this juncture another procedural objection was successfully interposed by the city. This time it was the statute of limitations that was used against him. The trial court expressed some doubt as to damages suffered and mentioned (without ruling thereon) the possible defenses of *res judicata* and failure to file a claim with the city council under its charter provisions.[4]

Is such failure fatal to Lenz' right to recover? On the one hand we might close the matter simply by pointing out that the charter provides that "any demand or claim against said city" shall first be presented to the common council. Lenz admittedly has not done so. Thus inexorable logic, if that is all we should consider, would lead us to the facile conclusion that he may not sue.

But it is only by divorcing these words from their history and the precedents that we are justified in such conclusion. For if anything is clear in the development of the claims and demands statutes common in this country, it is that they are interpreted neither broadly, being in derogation of the common law, nor blindly. Their purpose will be found in the cases cited in 17 McQuillin,[5] §§ 49.11 and 49.12. The city, it is said, is to be provided with full information concerning the rights asserted against it, in order

---

[4] Title 6, ch 7, § 11, Detroit city charter (Detroit Municipal Code [1954], charter section, p 206).

[5] Municipal Corporations (3d ed).

that it may investigate the incident complained of, discover the pertinent facts, and possibly adjust in amity. It must not be left in the dark as to what is involved in some obscure claim. Much of this, of course, goes straight back to the divine right of kings, for a city has the same discovery and settlement processes open to it as any other litigant, but such, at any rate, is the theory. But the rule does not have the all-embracing effect appellees here seek to give it. Thus if an affirmative act of the city itself causes the injury, it has been held[6] that no notice need be given of the claim or demand. Why not? Because in such case (p 180) "the municipality which is entitled to the notice must know of the injury, and hence notice would be unnecessary." But the most comprehensive shrinking of the literal breadth of the notice requirement was that of our own court, and properly so. Claims and demands made against a city arising out of its operation of a bus were held not within the notice requirement in *Borski* v. *City of Wakefield*, 239 Mich 656. Why not? Because the city was operating the bus in a proprietary capacity, not as a sovereign. Obviously, then, it is not enough merely that a "claim or demand" be involved. The words require interpretation, not automatic application. We proceed, then with interpretation.

Here Lenz asserts that his presentation of a claim to the city would be, in his words, ridiculous. He argues that the situation presented is not within the purpose of the act, since no investigation is called for and, obviously, there is no hope "amicably" to adjust the matter now being litigated for the third time. He says that no official of the city of Detroit would have the legal power to award damages for his wrongful discharge since there has never been a determination of this question on its merits. He

---

[6] *Hughes* v. *City of Nashville*, 137 Tenn 177 (192 SW 916).

makes, as well, additional arguments with respect to the application of the ordinance to his case but they all boil down to the simple proposition, variously stated that a claim, under the circumstances of his case, is not within the purview of the ordinance.

The problem here faced is as old as the law itself. It involves the conflict between the administration of justice according to the literal words of a statute, ordinance, or rule, and its administration according to what we conceive, after much search, to be the purpose in the words employed. It was Judge Learned Hand who once wrote that it is "one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary."[7] The late Judge Jerome Frank, of the second circuit, expressed the same thought, reminding us of Corbin's insistance that "able judges cannot live by rules alone." They, he said, serve to "nudge the judge, give him hints, strong hints he must seldom disregard; but a judge who knows nothing but the rules will be a judicial routineer, a dispenser of injustice, since * * * the art of judging really lies in the ability to cope with the unruly."[8]

As for me, the choice was long-since made and I am not induced to recant. Viewing the ordinance in the light of its purpose it is clear to me that it has no application to the case before us, indeed, as Lenz himself put it, that it would be ridiculous to make such application. If we interpret the ordinance (as we did in *Borski, supra*), within the framework of applicable common-law principles, there is an elementary, conclusive answer to the asserted requirement that claim should have been made before this court action was filed: the law never requires a litigant to go through the idle ceremony of making a

---

[7] *Cabell* v. *Markham* (CCA2, 1945), 148 F2d 737, 739.

[8] Frank, Book Review [of Corbin on Contracts], 61 Yale LJ 1108, 1113.

futile demand. The principle finds application in all fields of the law. In the law of conversion, no demand need be made if it is clear that it would be useless or unavailing.[9] In the law of corporations, no demand need be made (that the corporation itself sue) prior to a stockholders' derivative suit if it would be fruitless.[10] The futility, moreover, need not be proved to a mathematical nicety. The law is a practical business and it does not require the impossible, namely, precise proof of future events. It is enough if refusal may be "inferred with reasonable certainty." (*Polish American Case, supra.*) But we need not rely upon analogy, apt though it may be. We have held squarely in this area (of the demand upon the Detroit common council) that such will not be required if "it would have been a useless gesture." (*Ely* v. *City of Detroit,* 306 Mich 300.) In *Ely* the corporation counsel had refused to recommend payment of any part of the bill sued upon. In the case before us his action was even more clear, involving, as it did, protracted litigation.

There may be those who would insist that after 10 years of unremitting effort to obtain reinstatement, and after 2 lawsuits, each of which was won below but lost in this Court, if Lenz now presents to the city of Detroit a claim for damages, it might see the error of its ways (despite what we have ruled), repent, and concede that he has suffered a wrong after all, something it has successfully denied, through its proper legal and administrative officials, for the past decade. The gracious and generous thought does credit to all who nourish it. As for myself, I do not regard it as reasonable. I have concluded, with much regret, that the milk of human kindness is neither so rich nor so abundant. In short, it is my opinion that making such demand

[9] *Iler* v. *Baker,* 82 Mich 226.
[10] *Polish American Publishing Co.* v. *Wojcik,* 280 Mich 466.

would be a useless act. If I were convinced otherwise I would order its filing *nunc pro tunc* upon remand for trial.[11]

Without, as we have noted, passing upon the defenses of *res judicata,* or failure to file a claim, the trial court squarely held that "the statute of limitations is a complete bar to recovery by the plaintiff if he has any right to sue for damages in the first place."

Is it? Is there only one cause of action involved here? Or may the same set of facts eventually give rise to several causes of action? We take it as settled that the latter is the true situation. Thus in *Kelly* v. *Chicago Park District,* 409 Ill 91 (98 NE2d 738), plaintiffs, asserting wrongful discharge, were upheld after prolonged mandamus proceedings. Their action for salaries wrongfully withheld was challenged on the ground that the 5-year statute of limitations barred recovery. The court held not.

"The cause of action for salaries could not accrue to plaintiffs until their rights to their respective positions were first determined. * * * Where a party's success in one action is a prerequisite to his right to maintain a new action, the statute of limitations does not begin to run as to the new action until the determination of the pending suit, which decides whether the new right exists." (pp 95, 96.)

Similar was the result in *City of Phoenix* v. *Sittenfeld,* 53 Ariz 240 (88 P2d 83). Here a policeman, allegedly wrongfully discharged after fruitlessly appealing to the civil service board, tested the action in certiorari. The trial court, on December 29th,

---

[11] "The courts have been reasonably liberal in interpreting the notice provisions of the statute, so long as the municipality had in fact received adequate notice on which to base an investigation and discover the facts pertinent to the alleged negligence. If there is any question about the matter, we hereby grant leave *nunc pro tunc* to plaintiffs to file the complaint herein." *Martini, Jr.,* v. *Olyphant Borough School District,* 83 Pa D & C 206, 208.

found the discharge wrongful and ordered his reinstatement. The city was reluctant and did not finally reinstate him until May 7th, just short of the time limit for appealing the decision of the trial court. His salary claim was resisted under the statute of limitations. This the court rejected. It first held that the salary claim must be determined by the validity of the discharge, and that this was not known until the court's decision on December 29th. It then held that, since the city had 6 months for appeal, the policeman's action for salary would have been premature until expiration of the right to appeal or acquiescence in the trial court's decision. The statute did not begin to run, it was concluded, until May 7th, the date the city accepted the judgment by reinstating the officer.

The reasoning of the above and similar cases directly supports plaintiff's position. At the time of plaintiff's so-called discharge he had, theoretically, 2 inconsistent courses of action open to him: he could accept the discharge as effective (this being the normal situation when an employee is discharged) and sue for damages if the discharge were wrongful, as, perhaps, in violation of contract. Or, in the alternative, he might reject the discharge as being ineffective and sue for reinstatement, with incidental damages. As a matter of fact there is some authority to the effect that a municipal employee who asserts he has not been legally dismissed must move seasonably in asserting his continued claim to the office or his failure will result in an abandonment thereof. *Jones* v. *Doonan,* 265 Mich 384; *Wayne County Prosecuting Attorney, ex rel. Taxpayers,* v. *City of Highland Park,* 308 Mich 425. Consistently therewith it has been held that the dismissal cannot be inquired into collaterally, but must be reversed in a direct proceeding therefor. *Van Sant* v. *Atlantic City,* 68 NJL 449.

The latter course (of contesting the validity of the discharge) was that adopted here by Lenz. He would hardly dare not resist the legality of the discharge, lest such failure be construed as abandonment of the office and he was within a few years of his pension. Moreover he had had no hearing at all, in the legal sense. Consequently his action tendered us the issue of the legality of his discharge. If such issue is decided against the employee, he has no further claim. If it is decided in his favor a new cause of action for the reparation of financial damages suffered arises, as we have seen, simultaneously with and dependent upon, the decision rendered.

But there is a third possibility. The court may decline to rule upon the legality of the discharge, merely denying reinstatement because of its alleged impracticability from the city's point of view,[12] in other words, change of conditions, laches. In such case does the employee lose his right to have the legality of his discharge (the issue seasonably tendered by him) passed upon by the running of the statute of limitations?

We could rule, of course, that it does. We could simply say that it has been over 10 years since the alleged discharge and that the statute has run. But the difficulty with this position is obvious. None of the reasons for the running of the statute is present. The matter has been in constant litigation ever since it happened. There is nothing "stale" about the claims asserted, nor (limitations being statutes of repose, as we have held) is the defendant in any position to assert that his repose is being disturbed

---

[12] "Plaintiff seeks reinstatement to an abolished position, with resultant disruption of the existing system under which the duties of the abolished positions have been distributed and otherwise integrated therein, and giving rise to a serious question of rights to pension and unearned back pay for a 6-year period." *Lenz* v. *Mayor of Detroit*, 343 Mich. 599, 601.

by an unsuspected claim arising out of a long-settled transaction as to which all memories have faded.

I do not think it fruitful to theorize upon a purely conceptual basis. We have a practical problem. The specific issue now facing us is whether a cause of action for damages accrued to plaintiff upon our final refusal to order his reinstatement to employment with the city. He asserts, and the record bears him out, that from the very outset, back in 1949, he has done everything possible to obtain a ruling from us upon the legality of his alleged discharge. He also points out that with our ruling in the second *Lenz Case* that change of conditions exists, and that such change of conditions prevented the granting of the relief prayed by him, a new cause of action arose, simultaneously with and dependent upon the court's decision, as it did in the *Kelly* and *City of Phoenix Cases, supra*.

Our problem is one of statutory interpretation. What, in this factual situation, is the meaning of the expression "cause of action" in the statute of limitations? It is nowhere defined therein nor is it a term of fixed content. Actually it is no more than an aggregation of operative facts "which should afford ground or occasion for the court to give judicial relief."[13] This, of course, "is frankly placing the matter [where it belongs] in the hands of the judge and seems much preferable to the seeming exactness of many definitions which turns out to be mere delusion."[14]

To me one choice is so clear that there is no other. Far from there being, in Judge Clark's words, *supra*, no "ground or occasion for the court to give judicial relief," we are under a bounden duty so to do. The spectacle of our whipsawing this litigant back and forth between certiorari and mandamus without ever

---

[13] Clark, Code Pleading (2d ed), p 137.
[14] Clark, Code Pleading (2d ed), p 138.

passing on the merits is a reproach to both bench and bar. It gains nothing in luster or in dignity that we finally cast him out on the ground that he has brought us a stale claim. Stale it may be to us, but a wrong that cannot even be heard, to say nothing of being righted, has a way of burning on and on, for days without end, of outliving even its perpetrators. I say to hear Lenz out. I want to know whether an official charged by law with the duty of conducting a full hearing can walk out of the hearing before the defendant has been heard, slam the door, and make it stick.

The judgment should be reversed and the case remanded. Costs to appellant.

SOURIS, J., concurred with SMITH, J.

BLACK, J. (*concurring*). The defendant city's charter validly (there is no challenge to its validity) provides that "any demand or claim against said city,"* not previously presented to the common council for allowance or rejection, shall not be actionable against the city. It is agreed that the claim upon which plaintiff declares has never been presented according to requirement of such provision. Is the provision not applicable in bar of this suit?

I neither read nor hear any argument upon which it might be said, plausibly or otherwise, that the provision does not so apply. Accordingly, and on sole strength of the city's right to insist that the mentioned provision of its charter be observed as a condition of suit, I vote to affirm.

KAVANAGH, J., concurred with BLACK, J.

EDWARDS, J., did not sit.

---

* For quotation of such charter provision, see opinion of Mr. Justice KELLY.